PHILIP BLESSING *vs.* JOHN HOUSE'S LESSEE.—*December,*
1831.

In an action of ejectment where defence was taken on warrant, and plots
were returned, the defendant offered in evidence a deed for "all that part
or parcel of land lying and being in, &c. as has been willed by the said
W, (the grantor) to his said daughter, (the grantee) as will more fully show
by reference to the said last will and testament, bearing date, &c. for 100
acres, it being designated by the *Old Cabin Farm,* it being likewise to be
taken from that part or parcel of land the said W bought of H, to be laid
off by the said W's executors, at his death, for 100 acres;" and also
offered in evidence another deed between the same parties, which purport-
ed to confirm the first deed. The second deed described the land by metes
and bounds. *The two deeds were offered as constituting one valid deed.*
The first deed was not located on the plots, the second deed was. The
will of W was not produced, nor did it appear that his executors had laid
off any land for the grantee. HELD, that the first deed was void for un-
certainty—could not be read because not located, and that the second deed
could not operate as a confirmation of the first.

No title paper in an ejectment, where defence is taken on warrant, can be
read in evidence, unless it is located.

It is an essential attribute of a tenancy in common, that there should be a
unity of possession; wherever, therefore, the tenure of the estate intend-
ed to be conveyed indicates a holding in severalty, or by particular or
specific description, a tenancy in common cannot exist.

It is the office and operation of a deed of confirmation, to corroborate and
give legal effect to a voidable, and not a void estate. It cannot work upon
an estate void at law.

APPEAL from *Frederick* County Court.

*Ejectment* for a tract of land lying in *Frederick* County,
called *More Bad than Good,* containing 265 acres.

The defendant (the present appellant) took defence on
warrant, and plots were returned. Issue was joined upon
the plea of not guilty.

At the trial, the plaintiff offered in evidence the patent
for the tract of land called *More Bad than Good,* grant-
ed to *William House* for 265 acres on the 27th October,
1795. And then proved that the land is duly located on
the plots by the plaintiff, agreeably to the courses and dis-
tances contained in the patent; that the tract of land called

*More Bad than Good,* has acquired by reputation, and is known in the county as and by the name of *The resurvey on More Bad than Good.* He then offered in evidence a deed duly acknowledged and recorded from *William House,* (the patentee) to *John House* the lessor of the plaintiff, for 76 acres and 25 perches of land, bearing date on the 9th August, 1817; and proved that the said deed is duly located on the plots.

The defendant then offered in evidence a deed from *Archibald Edmonson* to *John Holland,* dated 19th Dec'r, 1771, for 200 acres of land, called *Part of the resurvey on Drunkards not Mistaken;* and also for another tract called *Grog,* containing 54 acres of land, and then offered the deed from *John Holland* to *William House,* dated the 2d November, 1793, for the same lands called *The resurvey on Drunkards not Mistaken,* containing 200 acres, and *Grog,* containing 54 acres, and proved that said lands are properly located on the plots in this cause. The defendant then offered in evidence the following deed from *William House* to *Mary Harvey:* "This indenture made this 9th July, 1817, between *William House* of, &c., of the one part, and *Mary Harvey,* daughter of the said *W. H.* of the other part, witnesseth: that the said *W. H.* as well for and in consideration of the natural love and affection which he, the said *W. H.* hath and beareth unto the said *M. H.,* as also for the better maintenance, support, livelihood, and preferment, of her, the said *M. H.,* hath given, granted, &c., and by these presents doth give, grant, &c., unto the said *M. H.,* her heirs and assigns, all that part or parcel of land, lying and being in, &c., as has been willed by the said *W. H.* to his said daughter *M. H.,* as will more fully show by reference to the said last will and testament, bearing date, the 4th July, in the year of our Lord, 1817, for 100 acres of land, it being designated by the *Old Cabin Farm,* it being likewise to be taken from that part or parcel of land the said *W. H.* bought of *Holland,* to be laid off by the said *W. H's* executors at his death, for 100 acres

of land, together with all and singular the houses, build-
ings, &c., unto the said *M. H.* as aforesaid, or any part or
parcel thereof belonging, or in any wise appertaining or
therewith commonly held, used, occupied, enjoyed or ac-
cepted, reported, taken or known, as part or parcel of, or
belonging to the same, and the reversion, and reversions, re-
mainder, and remainders, rents, issues, and profits, of all and
singular the said premises with their appurtenances, and
all the estate, right, title, interest, property, claim, and de-
mand whatsoever, of him the said *W. H.* of, in, and to, the
said part or parcel of land and premises, and of, in, and to,
every part and parcel thereof, with their, and every of their
appurtenances. To have and to hold, " &c. And also
the following deed between the same parties. " This
indenture made the 4th September, 1818, between William
House, of &c., of the one part, and *Mary Harvey*,
daughter of the said *W. H.* of the other part. Whereas
the said *W. H.* did, by deed bearing date on or about the
9th July, in the year 1817, duly executed and recorded,
convey or intended to convey to the said *M. H.* the land
and premises hereinafter described and conveyed, and there
appearing to be considerable defects in the said deed, from
whence doubts have arisen, whether the same be suffi-
cient in law to convey the said land to the said *M. H.* as
thereby intended; to correct all errors and mistakes there-
in, and confirm the title of the said land in her the said *M.
H.*, the said *W. H.* hath given this deed of confirmation.
Now this indenture witnesseth, that the said *W. H.* as
well for the causes above recited, and the natural affection
and love, which he, the said *W. H.* hath, and beareth unto
her the said *M. H.*, as for and in consideration of the sum
of one dollar, current money, to him in hand paid by the
said *M. H.* at or before the sealing and delivering these
presents, the receipt whereof he, the said *W. H.*, doth
hereby acknowledge, hath given, granted, &c. and by these
presents, doth give, grant, &c. unto her, the said *M. H.*, her
heirs and assigns, all that tract or parcel of land lying and

being in the county aforesaid, within the following metes
and bounds, it being part of a tract of land called and
known by the name of *More Bad than Good;* beginning
for the same, at a white oak tree, standing to the westward
of the house where the said *W. H.* now lives, marked for
the end of the eighth line of a tract of land, called *The re-
survey on House's new design,* it being also at the end of
the thirty-first line of the said tract of land called *More
Bad than Good,* and running thence, &c.—describing the
land by metes and bounds, courses and distances—contain-
ing 98 acres of land, more or less, together with all and
singular the improvements, &c.; to have and to hold the
said tract or part of a tract or parcel of land, and every part
and parcel thereof, unto the said *M. H.* her heirs and assigns,
to the only proper use and behoof of her the said *Mary
Harvey,* her heirs and assigns forever."

The plaintiff objected to the admissibility of the first
deed from *William House* to *Mary Harvey,* and the court
sustained the objection, and refused to permit the same to
be read to the jury. The defendant excepted, and the ver-
dict and judgment being against him, he prosecuted the
present appeal.

The cause was argued before STEPHEN, ARCHER, and
DORSEY, J.

*Palmer* for the appellant, contended,

1. That the court below erred in rejecting the deed of
the 9th of July, 1817, when offered in connexion with the
deed of September 4th, 1818, both constituting one deed.
The question then is, as to the admisability of the first
deed—if it was evidence for any purpose, the judgment
must be reversed; it can be affirmed only upon the ground
of its being an absolute nullity. He insisted that the deed
operated as a covenant to stand seised to the use of the
grantee, and that a Court of Chancery need not be resorted
to for the purpose of enforcing the covenant. The grantor

could not resist this deed, and if he could not, neither can *John House,* who claims under the same grantor. *Jackson vs. Sebring,* 16 *Johns. Rep.* 524. 2 *Thos. Co. Lit.* 682, *note* 2. 2 *Will.* 62. After the execution of the deed, the father and daughter (grantor and grantee) became tenants in common ; its design was a family settlement, securing to the daughter her proportion of his, the grantor's estate. The deed refers to the will of the grantor, dated July 4th, 1817, in which the land it intended to convey, is described as the *Cabin Farm,* which is a sufficient designation. By the will, he directed his executors to do, what he himself does, by his deed of September, 1818. This last deed is not a confirmation of the former deed, but a deed of partition, giving a specific description of the property. They are not relied on, as furnishing the ground for a recovery in ejectment. The party claiming under them is in possession, and merely relies on them to defend that possession. Considering *William House,* a tenant in common with his daughter, the grantee, he could not convey to *John,* any separate portion of the land, held in common with *Mary.* 4 *Kents. Com.* 364. *Hammond vs. Norris,* 2 *Harr. and Johns.* 146. *Thomas vs. Turvey,* 1 *Harr. and Gill.* 435. 2. If the deed of 1817 did not in itself contain a sufficient description, it was competent to the defendant to show by the deed of 1818, that the *Cabin Farm,* referred to in the first deed, contained a certain number of acres, and was sufficiently defined. *Jackson vs. Delancy,* 4 *Cowen,* 429, 432. That which can be rendered certain, is sufficiently certain. 4 *Cruise Dig.* 298. 1 *Thos. Coke,* 240. The first deed was to take effect after the death of the grantor, and refers to his will—if good at the time of its execution, subsequent events cannot make it bad. The first deed at the time of its execution, was certainly good as against the grantor. If he had died leaving the will referred to, the grantee could have compelled his executors to lay the land off, in conformity with the will—Chancery would have coerced them to do so. Though the deed may be de-

fective as such, it is still good as a contract, and Chancery will compel its specific execution. *Tiernan vs. Poor and ux.* 1 *Gill and Johns.* 221. *Beal and Lynn,* 6 *Harr. and Johns.* 533. *Hunt vs. Rousmaniere,* 1 *Peters, S. C.* 13. 2 *Piere Wm.* 242. 1 *Eq. Cas. Abr.* 286. *Sugden Vend.* 223, 523, 527. The deed of 1818 revokes the will *pro tanto,* and effectuates that which the testator designed should be done by his executors, after his death. If a Court of Chancery would enforce the deed as a contract, it cannot be absolutely void, and when enforced, it must take effect from its date. *Browne vs. Browne,* 1 *Harr. and Johns.* 430.

*F. A. Schley* and *Wm. Schley* for appellee,—referred to the plots in explanation of the conflicting pretensions of the parties. The defendant claims under a deed from *William House* to *Mary Harvey,* dated 9th July, 1817, and which was located by him, *according to the courses and distances of a second deed from said W. H. to said M. H. dated the 4th of September,* 1818. But the deed of the 9th July, 1817, was counterlocated by the plaintiff, *in such manner* as not to interfere with his location of his own pretensions; and as not to fall within the lines of the deed of 4th September, 1818. Thus the defendant claimed *title* under the deed of 9th July, 1817, and its true *location* was in issue, by reason of the plaintiff's counterlocation. The defendant offered both the deeds at the same time, and as forming together *one deed.* The objection was *exclusively* to the prior deed. The sole question, therefore, presented by the record is, whether the deed of 9th July, 1817, was admissible in evidence, or not? They made the following points :—1. That said deed was not admissible, *per se,* as an independent instrument, either to prove *title* or *location.* 2. That it was not admissible, *in connexion with the second deed,* as evidence for the defendant, for any purpose.

1. The deed was not admissible *per se.* It is void for uncertainty. Every deed must comprehend sufficient certainty of the lands or tenements intended to be conveyed.

2 *Thomas Co. Lit.* 240.    And such certainty must be collected from the terms of the deed, of which the court are to judge:—matter *in pais* cannot be resorted to, except in cases of latent ambiguity.    *Carroll vs. Norwood,* 5 *Harr. and Johns.* 163.    Where the ambiguity is patent, the deed is void, either absolutely, or except on the ground of election, according to circumstances.    *Hammond vs. Norris,* 2 *Harr. and Johns.* 147.    *Huntt & Parks vs. Gist,* 2 *Harr. and Johns.* 505.    *Thomas vs. Turvey,* 1 *Harr. and Gill,* 438.    The decisions in this court upon cases of judicial sales, where the returns of sheriffs have been quashed for uncertainty in the description of the premises, are *in point.* In those cases it was held, that such certainty was necessary in a return, as would enable the officer, upon a *habere facias possessionem,* to deliver possession of the premises. *Fenwick vs. Floyd,* 1 *Harr. and Gill,* 172.    *Clark vs. Belmear,* 1 *Gill and Johns.* 448.    *Express* certainty in the description is not necessary ; if there be a reference in the description to something *aliunde,* a recurrence to which will establish the certainty of the premises, such *demonstrable* certainty will suffice.    They referred to the deed to shew, that it does not contain any *express* certainty.    The *name of the tract,* whereof the part intended to be conveyed is parcel, is not even given ; no *muniments* are designated ; no *courses and distances* mentioned.    They insisted that it does not comprehend the requisite *demonstrable* certainty.    Strictly speaking, there is but one reference ; and that is to the grantor's will of 4th July, 1817, and what follows is mere recital from the will.    But at the utmost, there are but four matters *aliunde,* by which the certainty of the premises might be established.    (1.) *The grantor's will.*    Where is that will ?    What was the part therein devised to *Mary Harvey* ?    No such *will* was offered in evidence ; no such *devise* was located on the plots.    The deed could not, therefore, have been received on the suggestion, that the defendant might have afterwards produced the will.    As the devise was not located he could not offer

any such evidence. *Carroll vs. Norwood,* 1 *Harr. and Johns.* 177. (2.) *The Old Cabin Farm.* This is, manifestly, not given as an independent description; but is mere recital from the will, *wherein* the land devised to *M. H.* was designated as the *Old Cabin Farm.* But as an independent reference it cannot avail. The defendant did not locate the *Old Cabin Farm,* and could not, of course, have offered any evidence to show, that *its* boundaries agreed with his location of said deed. (3.) The part intended to be conveyed, *was to be* taken from that part of the grantor's land, which *he had bought from Holland.* The purchase from *Holland* is located, and consists of 254 acres. The part intended to be conveyed is only 100 acres. This was a case for election, but it was never made; or if made, such election is not located, and could not therefore be proved. It comes within the principles of *Huntt and Parks vs. Gist,* already considered. (4.) The part "intended to be conveyed" *was to be* laid off by the grantor's *executors* at *his death.* It was to be ascertained by the exercise of a *future* power. It is sufficient to say that it does not appear that *William House* is *dead;* or that he appointed *executors;* or that the *power* was ever exercised:—if exercised, as it is not *located,* no evidence could be received of the lines of the part laid off. The deed, therefore, in point of law, was merely void and inoperative. It could not be evidence of *title;* and having no properties whereby it could be located, and there being nothing on the plots to aid it, it could not be received in support of the defendant's locations. In the case of *Hammond vs. Norris,* there was no counterlocation of the defective deed. The question of *title* alone was in issue in that case; here *location* is also in issue. Where a location is made by one party, and no counterlocation thereof by the adversary, the location is admitted to be true. *Hughes vs. Howard,* 3 *Harr. and Johns.* 13. In that case, therefore, the deed was properly read to the jury, in explanation of the manner of its location. But when offered to prove *title,* it was declared to be void for uncer-

tainty, and not to be "a locatable deed." The decision in that case, is conclusive upon the questions in this. But it has been urged that the deed may be upheld *as a covenant to stand seised* to the use of *Mary Harvey.* To stand seised *of what?* The same certainty is required in such a deed, as in a deed of bargain and sale. The only distinction between *a covenant to stand seised,* and a technical *bargain and sale,* arises from the nature of the *consideration,* and not the *form* of the conveyance ;—a *pecuniary* consideration being indispensable to the latter, whilst a merely *good* consideration would avail to support the former. 2 *Saund. on Uses and Trusts,* 46, 79. Both are *deeds;* and are construed by the same rules. Before the statute of uses what difference was between them? They were both considered as mere *declarations of uses,* operating without transmutation of possession—in the one case, on the possession of the *bargainor,* to raise an use in favor of the *bargainee;* in the other, on the possession of the *covenantor,* to raise an use in favor of the *covenantee.* In either case, livery of seisin would have made a *feoffment,* and would have operated by transmutation of possession, to vest the seisin in the bargainee or covenantee, who would have become the feoffee. The statute of uses, in both cases, by a legal transmutation, annexes the possession to the use. 2 *Thos. Co. Litt.* 578. 2 *Inst.* 671. But the statute can only operate a legal transmutation, where *livery of seisin* in fact would have made *a feoffment.* And is not *certainty of the premises* inseparable from the notion of livery? 2 *Thos. Co. Litt.* 334. Again :—It has been urged that the deed is good as creating *a tenancy in common.* This cannot be. The part 'intended to be conveyed' was intended to be held by her *in severalty,* and not *pro indiviso.* It is only necessary to recur to the definition of a tenancy in common, to break the force of this argument. 2 *Bl. Comm.* 195. 1 *Thos. Co. Litt.* 892.

It is the peculiarity of the estate of tenants in common, that neither can tell which part is his own. As Lord Coke

says, it is *pro indiviso.* As soon as the *particular part* is determined, it ceases to be a tenancy *in common.* It must be a holding *in common of every part* of the land. 2 *Black Com.* 192. *Co. Lit.* 188, *b.* In the deed he does not convey it as an *undivided* part. A moiety, a third, or any other part of a tract, or any other words to shew that there is a remaining part for him. Here he conveys it as "all that part or parcel of land as has been willed by him to her, as will more fully show by his last will and testament, bearing date, &c.; it being *designated* by the *Old Cabin Farm.*" Unity of possession is the essence of this kind of estate. That is, a possession pervading the *whole* estate. Yet by this deed he confines her right to 100 acres, and designates these 100 acres as *the Old Cabin Farm,* and as the land willed to her for 100 acres, as by his will, will more fully show, &c. By the deed, called by the defendant a deed of confirmation, and offered in evidence by him, he shows that he meant to convey by the first deed a specified quantity, and by *defined limits.* If then the 2d deed is to show the nature of, and explain and confirm the first, and they are *both* to be received as *one;* there certainly can be no tenancy in common.

2. The first deed was not admissible *in connexion with* the second. (1.) The second deed cannot avail to confirm the first. It may operate as an *original* deed, and as such was evidence, nor was *it* objected to by the plaintiff. But it cannot relate to the first deed, and make that good. A confirmation doth not *create* a right—it can only make sure a right *in esse. Confirmatio omnes supplet defectus, licet id quod actum est ab initio, non valuit.* It doth not strengthen a void estate :—*ubi donatio nulla omnino, nec valebit confirmatio.* 2 *Thos. Co. Litt.* 516. It has been admitted, however, that the second deed cannot be good as a confirmation. But it is insisted :—(2.) That it is good as *a deed of partition.* But this presupposes that the grantor and grantee were *tenants in common.* It has sufficiently been shewn that the prior deed could not create

such a relation. If it did create such a relation, then it would have been evidence independent of the second deed. Its *effect* in evidence would have been an after inquiry.

*Ross* in reply. The exception presents an isolated question, respecting the admissibility of evidence, no way connected with its effect; the exception is predicated upon the assumption, "that a deed which does not define the land intended to be conveyed with sufficient certainty, so as to convey locatable land, is absolutely void, and has no legal existence for any purpose." The exception is made, not to any of the formalities of the deed—these are all admitted. Under the circumstances of this case, the question naturally presents itself, as to the legal character of the deeds of the 9th July, 1817, and 4th September, 1818.

*William House* lived upon a piece of land called *the Old Cabin Farm*. Its limits and locations were well known; a portion of it was included in the lands he purchased of *John Holland*. His daughter *Mary Harvey* lived with him. He, for the consideration of love and affection, settled upon his daughter *M. H.* 100 acres of land, and described it as in the deed of the 9th July, 1817. By this deed he conveys 100 acres of *the Old Cabin Farm* to *M. H.*,—and had he not a right to convey a portion of that farm, without any other description than 100 acres of the *Old Cabin Farm*, or the one-third or fourth of it? and if he did, and as in this case for the consideration of blood, is it not a legal instrument? Is it not a covenant to stand seised to the uses, and does not the statute transfer the possession to the use? Does not *M. H.* under that deed hold 100 acres of the *Cabin Farm*, and her father the residue—not that she holds 100 acres by defined metes and bounds, but that she holds an undivided interest to the extent of 100 acres, her father holding the residue, and she holds this undivided interest as a tenant in common with her father, as long as he lives, according to the terms of the deed; after his death the executors are to lay it off, and

when it is laid off, either by the executors or by *William House*, the tenancy in common is dissolved, and she becomes a tenant in severalty. The deed of the 4th of September, 1818, operated only as a deed of partition; it only operated on the possession, and changed *M. H's* interest in the possession, and had no influence on her right or title to the land. That is not a deed of confirmation, nor has it ever been so considered by the appellant's counsel. A deed of confirmation supposes a defective deed, which it is designed to perfect or confirm; the deed of the 9th July, 1817, was perfect in itself for the purposes of its creation; it conveyed the right to the 100 acres: the deed of the 4th September, 1818, like all deeds of partition, only dissolved the unity of possession held by *M. H.* with *W. H.*, under the deed of the 9th of July, 1817. These deeds ought to have been received in evidence as one deed, tending to the same subject matter.

Is not the deed of the 9th July, 1817, considering it as constituting *M. H.* a tenant in common, properly located ? How can a tenant in common, a defendant, locate his defence? only by locating the whole tract, and showing his title to his interest in the same.—*M. H.* locates the *Old Cabin Farm*, and the whole of the purchase of *Wm. H.* from *John Holland*, to wit, the 254 acres, and then produces her deed of the 9th July, 1817, to show her interest in 100 acres of the *Old Cabin Farm* as laid off, of the 254 acres purchased of *Holland.* The above views are founded upon the supposition that the land in the deed of the 9th July, 1817, is not defined, &c. The question now arises,—Is not the description of the land sufficiently designated to ascertain and identify the 100 acres intended to be conveyed? Lands often receive a name by reputation, and will pass by that name. The extent of a farm is also often known by reputation. The farm in this case is called *The Old Cabin Farm*, it being likewise to be taken from that part, or parcel of land, *W. House* bought of *Holland.* Here are two points of description, and both well known; the land purchased of *Hol-*

*land*, is ascertained by course and distance ; and the defendant was prepared to prove the locations of *The Old Cabin Farm*. How then can the defendant have the benefit of this proof unless by locating the deed of the 9th July, 1817, as he expects to prove it ?   The appellant's counsel knows no other means to render that certain, that appears to be uncertain, until the explanation is given by means of location, and proof to establish it.   The deed must be received in evidence to show how it is located.   How can the defendant show the jury how he has located a paper or deed, unless he is permitted to read it ?   The reading of the deed to the jury makes it evidence neither of title nor of location ; to establish title or location is the effect of evidence, but it must be read in evidence, before the title or the location can be made the subject of investigation by either the court or jury.

That a deed cannot be read in evidence unless it is located, has long been the received law in ejectment cases in *Maryland ;* but that a deed or paper properly certified or proved cannot be read to a jury, to show how the party who claims under it, has located it, is, it is presumed, now for the first time to be decided.

Should it be said here, as it was below, that the deed of the 9th July, 1817, refers to a will of the 4th July, 1817 ; and as that will requires the 100 acres to be laid off by *Wm. H's* executors, the will should have been located.   The appellant's counsel again replies, that if the will was in existence, the appellant had no knowledge of it ; that *William House* died long before this suit was instituted, and the will of the 4th July, 1817, was never submitted to probate ; it is said it was destroyed,—it was certainly revoked *pro tanto*, as to the 100 acres by the deed of the 9th July, 1817, and the power to the executors to lay off the 100 acres, was executed by *Wm. House* himself, by his deed of the 4th Sept. 1818.

The deed of the 9th July, 1817, had for its object a family settlement,—its consideration is founded in natural affection, and it is to receive a benign and liberal construc-

tion. 16 *Johns. Rep.* 524, and the cases there cited. This deed having every requisite necessary to constitute it a covenant to stand seised to the uses, it must be so received, and is now, since the statute of 27 *Henry 8th, ch.* 10, considered a statutory conveyance. 2 *Tho. Co.* 682, *note 2, Am. Ed. West vs. Biscoe,* 6 *Harr. & Johns.* 465. 1 *Dallas,* 137. If the deed of the 9th July, 1817, cannot operate as a covenant to stand seised if it does not convey locatable land;—it may operate as a contract, which a Court of Chancery would enforce. There are a number of contracts which a Court of Equity would carry into effect, on which the statute would not operate. The court will lean towards giving validity to a deed;—if it can not have operation in one way, it may operate in some other way. 1 *Harr. and Johns.* 531–2. If the deed of the 9th July, 1817, was the contract of *Wm. H.* and he was bound by its engagements, whether it be the actual conveyance of 100 acres to *M. H.* as a tenant in common or in severalty, or as a covenant to convey 100 acres, still it was his contract, and being legally proved, it ought to have been received in evidence, as part of the defendant's defence ; as to its effect in proving title or location in the defendant, that is a distinct question from its admissibility as evidence.

The deed of the 9th July, 1817, constitutes *M. H.* a tenant in common with *W. H. ex vi termini;* she was to hold the 100 acres undivided until after his death.   If *Wm. H.* and *M. H.* are tenants in common, then he could not convey a distinct portion of the estate by metes and bounds, so as to prejudice his co-tenant. As against *M. H.* the deed to *John House* of the 9th August, 1817, is inoperative and void; 4 *Kent's Com.* 364, and the cases there cited, 2 *Con. Reps.* 243. 4 *Ib.* 485. 5 *Ib.* 363. If the deed of the 9th July, 1817, from *Wm. H.* to *M. H.* constitutes them tenants in common, though it should convey no locatable land, it shews an interest in the land to the extent of 100 acres, in *M. H.;* and if not sufficient to give her a title to a defined, specific 100 acres, it is sufficient to show the title to the 100

acres out of the plaintiff, and having this legal operation, it ought to have been received in evidence, to show title cut of the plaintiff. Suppose the will of the 4th July, 1817, had not been set aside by *W. H's* subsequent arrangements, and his executors had laid off the 100 acres, as *Wm. H.* himself, by his deed of the 4th September, 1818, had located it. Would not the partition of it thus, by his executors, have been received as the legal execution of their trust; if done by parol, it would have been good as a parol partition ; if by deed, it would be good as a partition by deed ; and could not *W. H.* do what he directed his executors to do ? And what has he done by his deed of the 4th September, 1818, but laid off to his daughter the 100 acres, the title or interest to which he gave her by the deed of the 9th July, 1817 ? If the executors had made the deed of partition, their deed would not have created the title to *M. H.;* her interest was acquired by the deed of the 9th July, 1817, and the deed of partition of the executors only dissolved the unity of possession, and made her a tenant in severalty. On a partition, each has his own land, as he held it before partition ; by partition he acquires a different interest in it. Thus, before partition, his interest was as tenant in common; after partition, his interest was as tenant in severalty. 1 *Thomas' Coke,* 828, *note R.* The appellant's counsel think there is an essential difference between the case of *Hammond and Norris,* 2 *Harr. and Johns.* 131, and the case at bar ; in the case under consideration, the deed of the 9th July, 1817, was regularly proved and produced, it was offered to show how it was located, and being thus offered, its validity was not, and could not then be made a question. The deed must first be admitted, before its legal operation can be investigated. But in the case at bar, it was not permitted to be read to the jury, even to show that it was located on the plots, and how located. In the case of *Hammond vs. Norris,* the deed was received to show how it was located.

In the case of *Hammond vs. Norris,* the deed of mortgage was again offered to prove the location of the 86 acres, and

86 acres, and was again objected to. And the court refused the same to be read to the jury, to prove the location of the 86 acres, upon the ground that nothing but the deed from *Joseph Wood* to *John Howard* for the 86 acres, can prove the location of the land recited in the deed of mortgage then offered to be read to the jury. The Court of Appeals will immediately perceive the ground upon which the deed of mortgage in *Hammond vs. Norris* was rejected, and how could the court have decided otherwise? The mortgage deed was no deed as to the 86 acres. How could it then be read to show its location? A location is intended to represent the figure of the land on paper, as claimed by a plaintiff or defendant. The location does not establish the title; it is intended to represent the land, but that which has no being, cannot be represented. Besides, the mortgage deed had no courses or distances—no point to ascertain and identify the 86 acres intended to pass. But in the case at bar, the deed of the 9th July, 1817, though it contains no land described by courses and distances, it has certain points of designation, to ascertain and identify the 100 acres intended to pass by the deed, and the appellant was prepared with proof to ascertain and identify the 100 acres located by him, as the 100 acres intended to be conveyed by *William House* to *Mary Harvey.*

Again, the question in *Hammond vs. Norris,* when the deed was offered, was made to the validity of the deed to prove location. A question very different from the admissibility of evidence. They arise in different stages of the trial. 2 *Peters' S. C. Repts.* 44.

When the deed of mortgage was offered to be read to the jury to show how it was located, it was admitted. But in the case at bar, the deed was not permitted to be read to show how it was located; the case relied on, therefore, was an authority directly in opposition to the exception made by the plaintiff to the evidence offered by the defendant.

The appellant's counsel contends the court below were in error in refusing to permit the deeds of the 9th July, 1817, and 4th Sept. 1818, to be read to the jury, for the following reasons: 1st.—The deed of the 9th July, 1817, was the agreement or contract of *W. H.*, creating a legal obligation of some character.   If not a deed sufficiently descriptive to convey locable land, it gave the grantee an interest in the 100 acres as tenant in common with *W. H.;* or it was an agreement that could be enforced in a Court of Chancery against him.   In any of these cases it was a legal contract against *W. H.*, and as such, ought to have been received in evidence; and if *John House* had actual or constructive notice of its existence, he took his deed of the 9th of August, 1817, subject to the use or equitable interest that *M. H.* had in the 100 acres.   2d.—The deed of the 4th September, 1818, ought to have been received as a deed of partition, as dissolving the unity of possession between *W. H.* and *M. H.;* it was not a distinct deed, conveying a distinct right, and it ought to have been received in connexion with the deed of the 9th July, 1817, as ancillary thereto.

Stephen, J., delivered the opinion of the court.

After referring to the evidence, the judge said :—The sole question, therefore, which this court is called upon to decide is, whether the first mentioned deed was legally operative and admissible, as evidence to go to the jury for the purpose for which it was offered, or in other words, whether the deed was not legally defective for uncertainty in the description of the property intended to be conveyed?   The deed has reference to the will of *William House*, to identify the land, which it was intended to transfer to *Mary Harvey;* and the question therefore necessarily arises, whether the will is not equally and essentially defective in the description of the property it was intended to convey?   And upon mature deliberation we think it unquestionably was.   By the will of *William House*, it was designated by the name of the *"Old Cabin Farm,"* it being likewise to be taken

from that part or parcel of land the said *W. H.* bought of *Holland*, to be laid off by the said *W. H's* executors at his death, for 100 acres of land." The *Old Cabin Farm* was not located on the plots, nor was there any location of the land as laid off by the executors of *W. H.* according to the provisions of his will. There was, therefore, no location on the plots to which the deed offered in evidence could apply, and the principle is well settled, that no title paper can be offered in evidence unless it is located. The deed we think was defective for uncertainty. It referred to the will to ascertain the land it was intended to convey. The will did not specify with certainty or precision the land devised; it was to be laid off by *W. H's* executors at his death. There was no proof in the cause that the executors of *W. H.* ever had executed the duty or trust devolved upon them by the will, and the reference by the deed to the will, does not therefore cure or remove the ambiguity. It was contended by the counsel for the appellant, that although the deed from *W. H.* to his daughter *M. H.*, did not operate to convey any specific quantity of land to his daughter, by reason of its ambiguity in the description of the land intended to be conveyed, yet that it might operate as conveying an undivided interest, and make *M. H.* a tenant in common with *W. H.*, and that the deed of the 4th of September, 1818, might operate as a deed of partition. But to this proposition we cannot accede. We do not think that the deed from *W. H.* to *M. H.* operated to make them tenants in common. It is an essential attribute of a tenancy in common, that there should be a unity of possession; wherever, therefore, the tenure of the estate intended to be conveyed, indicates a holding in severalty, or by particular or specific description, a tenancy in common cannot exist. 1*st. Tho. Co. Lit.* 875. " Tenants in common are they which have lands or tenements in fee simple, fee tail, or for term of life, &c. and they have such lands or tenements by several titles, and not by a joint title, and none of them know of this his several, but they ought by the law to occupy these lands or

tenements in common, and *pro indiviso* to take the profits in common.   And because they come to such lands or tenements by several titles, and not by one joint title, and their occupation and possession shall be by law, between them in common, they are called tenants in common."   In this case, the 100 acres were to be laid off by executors, and the devisee was to hold them exclusively in her own possession, which provision in the will is wholly destructive of the idea of a tenancy in common, to which estate, a unity of possession is essential.   Neither can the deed of the 4th of September, 1818, operate as a deed of confirmation: because it is the office and operation of such a deed, to corroborate and give legal effect, not to a void, but voidable estate.   A confirmation does not strengthen a void estate; for a confirmation may make a voidable or defeasable estate good, but cannot work upon an estate that is void in law.  1 *Cru. Dig.* 105.   It was contended by one of the counsel for the appellant, that though the first deed might be defective and inoperative at law, yet that it might be available in equity as a contract, which a Court of Chancery would enforce.   Admitting that Chancery will aid defective conveyances by parents making provision for children.  1 *Vernon*, 132.  1 *Fonb.* 349.   Yet it must be remembered, that the parties in this cause were litigating in a court of law, and whatever might have been the equitable rights of *Mary Harvey*, they could not avail her as matter of defence in the action of ejectment; nor is it believed that equity would have enforced the first deed to the prejudice of *John House*, who was a subsequent purchaser for valuable consideration without notice.   We are also of opinion that the principle established by the case of *Hammond vs. Norris*, 2 *Harr. and Johns.* 130, is strictly applicable to the case now before this court.   In that case, the plaintiff having located on the plots, a deed from *John Howard* to *Philip Hammond*, offered in the first bill of exceptions, to read in evidence a deed bearing date the 27th of September, 1753, being a deed of bargain and sale by

way of mortgage, conveying unto *Hammond* all those two parcels of land being parts of a tract of land called *Wood's Inclosure,* and sold to the said *John Howard* by *Joseph Wood,* one parcel containing 86 acres, the other 94 acres as by deed duly made and recorded in the records of *Frederick* county appears; the said two parcels of land being also what the said *J. Howard's* dwelling plantation is made upon. In the second bill of exceptions, he then produced and offered to read in evidence the said deed from *J. Howard* to *P. Hammond,* dated the 27th of September, 1753, herein before mentioned in the first bill of exceptions, and showed that the 86 acres of land therein mentioned were located by him on the plots, beginning at the end of the 27th line of *Wood's Lot,* as located by him at black A, and running, &c. to the beginning. "*Chase, Ch. J.* The deed from *J. Howard* to *P. Hammond* of the 27th September, 1753, does not sufficiently specify the land, being for 86 acres and 94 acres, parts of *Wood's Inclosure,* conveyed by *Joseph Wood* to *John Howard,* as appears by deed recorded in *Frederick* county, but the deed thus referred to, cannot be found. This deed does not define the 86 acres by any courses or distances, there is therefore, nothing in it whereby any locatable land can be conveyed, and of course passes nothing, and passing nothing, it cannot be evidence. Nothing but the deed itself, can prove the location of the land recited in the deed now offered to be read to the jury. The court are therefore of opinion, that the deed from *J. Howard* to *P. Hammond* is not legal evidence to show title in *Hammond* in the 86 acres of land, part of *Wood's Inclosure,* as located on the plots by the plaintiff, or to support his location of the same, without producing the deed from *Joseph Wood* to *J. Howard,* to which the deed from *J. Howard* to *Hammond* doth refer, to ascertain and identify the 86 acres intended to pass by the same, and that the deed is inoperative to pass the same, without producing that deed. The court refuse therefore to suffer the same to be read to the jury." This court are of opinion that the principle in-

volved in that decision, is decisive of the question now before this court, and that the judgment of *Frederick* County Court ought therefore to be affirmed.

JUDGMENT AFFIRMED.