JOHN DENN, Lessee of GABRIEL D. LANGLEY ET ALS. *vs.* RALPH F. JONES ET ALS., Heirs and Devisees of MARTHA J. CHEW.

EJECTMENT: EVIDENCE: LOCATIONS.—In ejectment no title paper not properly located on the plats is admissible in evidence. But where the grant and the deed are the same, location of both is unnecessary. So where the whole of a tract is located on the plats a deed of the whole may be given in evidence, though not itself located.

Where two deeds, one for a specific portion and the other for the residue of the same tract are offered in evidence, the patent being located they are admissible without being otherwise located.

Certainty is required in locations, and "where the title paper is so unintelligibly represented on the plats and explanations, as that it is almost impossible for either the Court or jury to say whether the locations are truly made, such title paper cannot be used as proof."

Where a party takes defence on warrant, and the plaintiff has located his pretensions, such location is admitted unless the defendant counter-locates; if the counter-location covers the same ground as the locations of the plaintiff, it is equally an admission of the correctness of the latter.

Where the same title paper is located by both parties in the same manner, covering the same ground, the location is binding upon both, and neither is allowed to dispute its correctness.

——; ——: ——; PRACTICE.—Where in ejectment there is no dispute between the parties in regard to locations,—the real question being as to the title only, while under the plea of *not guilty*, the *onus* of the establishing a good title is upon the plaintiffs, they may commence with any part of their evidence, and are not compelled to pursue any particular order of proof in tracing their title.

APPEAL from the Circuit Court for Prince George's county.

This was an *Ejectment*, brought February 27th, 1849, by the appellants, for parts of three tracts of land, one called "Moore's Part of Barbadoes Enlarged," containing 193 acres, another called "Gedor," containing 20 acres, and the other called "Gilead," containing 61½ acres. Defence was taken on warrant, and a warrant of resurvey was issued July 8th, 1850. By reason of applications to amend the plats and other causes, the case was continued

from time to time, and was not brought to trial until the April term, 1865, of the Court below.

The land in dispute is claimed by the plaintiff's lessors, as heirs of Robert Chew, and by the defendants, as purchasers, at judicial sale, under execution against him. The plaintiff instructed the surveyor to locate for his claims and pretensions, the three patents for the above mentioned tracts, the locations to be made according to the metes and bounds, courses and distances, in the respective patents mentioned, with a due and proper allowance, if any is required, for variation ; also, a deed, dated 17th of August, 1814, from McKenny and wife to John Chew, the testator of Robert Chew, the father of the lessors of the plaintiff, the possession of John Chew under this deed, his dying seized thereof, and his will devising the same to said Robert Chew, the possession of Robert Chew from the death of the widow of John Chew, up to the time his possession ceased, and to counter-locate every location made by the defendants. The defendants' instructions were to counter-locate the plaintiffs' locations, and to locate their own pretensions by locating : 1st. The possession of Walter Chew. 2nd. The deed from McKenny and wife to John Chew, and the deeds from Belt, the sheriff, to Clarke, and from Clarke to Walter Chew.

By examining the plats and explanations, and locations made by both parties, it appears that they agree as to the point of the beginning of "Moore's Part of Borbadoes Enlarged," and of "Gilead," and as to a certain point B being the end of the first line, and beginning of the tract ; and it also appears, that both parties have made precisely the same location of the deed from McKenny and wife, and that location is the same as the defendants' locations of the possession of Walter Chew, and the deeds from the sheriff to Clarke, and from Clarke to Walter Chew. It also appears, that the defendants' counter-locations occupy the

same ground as the plaintiffs' locations, whilst the counter-locations of the latter are thrown off and occupy different ground.

*1st Exception.* The plaintiff offered in evidence his locations, and the patent for "Moore's Part of Barbadoes Enlarged;" but the Court, ( BERRY, J.,) refused to allow the patent to be read in evidence, upon the objection of the defendant that it was not properly located on .the plats. To this ruling the plaintiff excepted.

*2nd Exception.* The plaintiff offered to read to the jury the deed from McKenny and wife to John Chew, and the location thereof on the plats ; also, a deed from Moore to Lingan, and a deed from James to Lingan, but the Court refused to allow any of said deeds to go in evidence, upon objection by the defendant, that said deeds were not, nor was either of them, properly located on the plats. To this ruling the plaintiff excepted.

*3rd Exception.* The plaintiff then offered to read in evidence to the jury the patent of "Moore's Part of Barbadoes Enlarged," and the return and explanation of the location thereof on the plats,—and in connection therewith, and for the purpose of showing that said patent was actually located, and meant to be, by the surveyor, on the plats offered to be read in evidence to the Court,—the plaintiffs' instructions to the surveyor ; and, also, offered to prove to the Court, by one of the plaintiffs' counsel, that said patent was, in fact, the same paper which was handed to the surveyor by the plaintiff, to be located by him under said instructions, and was by him returned to the counsel of the plaintiff as one of the title papers that had been located by him on said plats ; but the Court refused, notwithstanding said proof, to allow said patent and said plats to go to the jury, upon the defendants' objection that said patent was not located on the plats. To this ruling the plaintiff excepted.

*4th Exception.* The plaintiff then offered to read in evidence the patent for "Gilead," and to follow it up with evidence that the said patent is, in point of fact, correctly located upon the said plats ; but the Court refused to allow said patent and plats of the same, or said evidence, to go the jury, upon the ground that said patent was not located on said plats. To this ruling the plaintiff excepted.

*5th Exception.* The plaintiff then offered to read in evidence the patent for "Gedor," and to follow it up by evidence, that the return made upon the plats by the surveyor is, in fact, a true and correct location of the said patent ; but the Court refused to allow said patent or said evidence to go the jury, upon the defendants' objection that said patent was not, in fact, located on said plats. To this ruling the plaintiff excepted.

*6th Exception.* The plaintiff then offered to read in evidence each and all of these patents and deeds, and proved by Jackson, that Chloe Ann McKenny, the wife of William McKenny, and one of the grantors in the deed from McKenny and wife to John Chew, was the only child and heir-at-law of Nicholas Lingan, the grantee in the two deeds of Moore and James to him ; and, also, offered the locations of said several patents and deeds on the plats of the surveyor, as made under the warrant of resurvey in this cause, and offered to read the said several patents and deeds, and the locations thereof, on said plats, to the jury, on the ground that the said locations of said patents and deeds had not, nor had either of them, been counter-located by the defendants. But the Court was of opinion, that the plaintiff's locations of each and every of said patents and deeds, had been properly counter-located by the defendant on said plats, and refused to allow said patents and deeds, or any one of them, and their locations as afore-

said, to be read in evidence. To this ruling the plaintiff excepted.

The verdict and judgment were for the defendants, and the plaintiff appealed.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough and Weisel, J.

*O. Miller* for the appellant.

1st. The appellant insists, there is error in the rulings of the Court below, in the several exceptions, refusing to allow the patents and other title papers to be read in evidence, upon the ground that they were not in fact, or not properly located on the plats. Assuming here that the proper location of these title papers on the plats is a question to be decided by the Court, and not by the jury, upon evidence adduced to them, affecting the fact of proper location or not, it is insisted, that they are, each and all of them, located in fact, and properly located, and, therefore, entitled to be read in evidence. The objection urged in the Court below to these locations, was that several of the courses in these patents are stated by the surveyor differently from the patent courses. For instance, the second course in the patent of "Moore's Part of Barbadoes Enlarged," is "east eighteen degrees, south 182 perches." This is stated by the surveyor as "south seventy-two degrees, east 182 perches." This is precisely the same course, and no different line could possibly be run by the one description than by the other. Again, the third course in the same patent, is "north by east 39 perches," and the surveyor renders it "north eleven and one-quarter degrees, east 39 perches." This is also absolutely the same course. So, also, of other similar courses. It will be shown to the Court, that each and all of them are scientifically accurate.

2nd. But in some of the exceptions, and especially the 4th, the plaintiff offered to prove to the jury that the patent was, in point of fact, correctly located on the plats. It is submitted, that the Court erred in refusing to allow this to be done. In the case of *Budd vs. Brooke*, 3 *Gill*, 198, it is said, that where a title paper is so unintelligibly represented on the plats and explanations as that it is almost impossible for either the Court or jury to say whether the locations were truly made on the plats, such paper cannot be used as proof. Here the matter to be determined was the correctness of the statement by the surveyor of the patent courses. This is no more a matter of science or of law, to be determined by the Court, than is the variation of the compass, which has always, in this State, been regarded as a matter to be determined by the jury. *Dorsey on Eject.*, 65, *note* 2, and cases there cited ; and 74, *note* 6. *Dorsey's Lessee vs. Hammond*, 1 *H. & J.*, 190. *Thompson's Lessee vs. Brown*, 1 *H. & J.*, 335. *Shields' Lessee vs. Miller*, 4 *H. & J.*, 1. *Code, Art.* 75, *sec.* 58.

3rd. There was also error in the Court's refusal, in the second exception, to allow the deed from McKenny and wife to be offered in evidence, because the same deed was located by the defendants in precisely the same manner, and covering precisely the same ground as the location thereof by the plaintiff. This was an admission of the correctness of the location of that deed, binding not only upon the parties, but the jury even would be precluded thereby from finding any other location thereof. *Armstrong vs. Risteau*, 5 *Md. Rep.*, 256.

4th. There was also error in the refusal to admit these papers in evidence in the sixth exception, on the ground that there was no counter-location of them by the defendants on the plats. If there is no proper counter-location by the defendants, the plaintiff's locations are admitted. *Dorsey on Eject.*, 56, *and note* 8, and cases there cited.

By examining the plats here, it appears that the defend-
ants' counter-locations are precisely the same, that is, they
occupy precisely the same *situs* the locations occupy.  They
do not occupy or cover any different ground.  This, it is
submitted, is no such counter-location as the law and prac-
tice in ejectment cases require.  The counter-locations
must be thrown off, and occupy different ground.

*Thos. G. Pratt* and *Daniel Clarke* for the appellees:

The plaintiff claims the land in dispute on a bare paper
title.  The defendants claim on title and possession.  The
rules of law upon which the decision of the case rests, have
been long since well settled.  First, it is incumbent on the
plaintiff to show a grant of the land claimed from the Lord
Proprietary, by the production of the patent or a copy under
seal.  *Cockey's Lessee vs. Smith,* 3 *H. & J.,* 134.  *Dorsey
on Eject.,* 56.

Secondly.  He must show an unbroken title from the
Lord Proprietary down to himself, as the plaintiff can
only recover upon the strength of his own title.  *Dorsey
on Eject.,* 31.

Thirdly.  After title shown by production of deeds with
other necessary accompanying proofs, he must show the
true position or location of the land, to which the begin-
nings of the tracts or parts of tracts of land are essential,
to be proved by witnesses sworn on the ground, upon their
own knowledge or by hearsay, &c.  *Dorsey on Eject.,* 31,
57, 80 & 46.  *Shilknecht vs. Eastburn,* 2 *G. & J.,* 115.

The plats showing the true location of the lands are a
part of the pleading, and require the same certainty as other
pleadings.  *Medley vs. Williams,* 7 *G. & J.,* 169.  *Mundell
vs. H. & L. Perry,* 2 *G. & J.,* 193.  Certainty is the con-
trolling object of all locations.  Where the patent or other
title paper is so unintelligibly represented on the plats, and
by the explanations, as that it is almost impossible either for

the Court or jury to say whether the locations are truly made, neither the plats nor the title papers attempted to be located, can be used in evidence, (the paper not being admissible unless properly located on the plats.) And upon no other principle than their apparent correct location can they be given in evidence. *Budd vs. Brooke,* 3 *Gill,* 224. *Blessing vs. House's Lessee,* 3 *G. & J.,* 307. *Dorsey on Eject.,* 75.

Evidence *aliunde,* even the instructions to the surveyor cannot be used to help out the imperfections of the locations. *Getting's Lessee vs. Hall,* 1 *H. & J.,* 22. *Dorsey on Eject.,* 62, 63. 3 *G. & J.,* 290.

Fourthly. It is the province of the Court to decide as to the construction of the grant as well as the thing granted, except in the single instance of a latent ambiguity. The description of the subject of the grant is a part of the grant to be judged of by the Court. If the grant is susceptible of only one location as to the description of the land, it is the sole and exclusive right of the Court to decide on the correctness of it. A latent ambiguity is an ambiguity concealed or not apparent on the face on inspection of the grant, but created by the introduction of parol evidence, showing "that there were two tracts of land of the same name as that named in the patent, or that where there was a call for a creek and there were two creeks by the same name, or if a tree is called for and there are two trees set up as the call." So the variation of the compass is a question of fact left to the jury to decide upon all the evidence, because there is no certain rule established by law to guide the making of the allowance. *Pennington vs. Bordley,* 4 *H. & J.,* 457, 58, 73. *Hammond vs. Ridgely,* 5 *H. & J.,* 254, 55, 56. *Rogers vs. Moore,* 7 *H. & J.,* 146. *Thomas' Lessee vs. Godfrey,* 3 *G. & J.,* 142, 151.

Where a deed professes to include all the lands included in a patent which has been located, it may be read in evi-

dence without location of the deed, but not where the deed conveys but part of the lands included in the patent. 2 2 *G. & J.*, 115.   7, *Id.*, 69, above referred to.

The plaintiff offered three patents in evidence: The patent of "Gedor," to James Perrie, September, 1726. The patent of "Gilead," to James Hoskisson, April, 1750. The patent of "Moore's part of Barbadoes Enlarged," to George Moore, February, 1861. He has not offered any deed or conveyance of "Gedor" from James Perrie. He has offered no deed or conveyance from James Hoskisson of "Gilead." He has offered no deed of "Gilead" from Samuel Sheckels to Nicholas Lingan. He has offered a deed from George and P. D. Moore conveying two-thirds of "Moore's part of Barbadoes Enlarged" and a part of "Gedor," to Nicholas Lingan, without any proof of the identity of the grantors thereto, of their possession of said lands, or their power to convey the same. He has offered a deed from James James to Nicholas Lingan of one-third of "Moore's part of Barbadoes Enlarged," and a part of "Gedor," without any proof of the identity of grantor, of his possession or right to the said lands, or his power or authority to convey the same. He has offered a deed from McKenney and wife to John Chew of the lands claimed. He has not offered the will of John Chew in evidence.

I. The first point of the defendants is, that no unbroken title has been proved by the plaintiff in this cause.  *Dorsey's Eject.*, 31, 56 & 57.

II. That the patents and deeds are so unintelligibly represented on the plats and explanations, that it was impossible for the Court to say whether the locations are truly made or not.

There are three plats in the record. The first two are disposed of by a single objection, although others are multifarious. There is no letter "B" upon either, although

the explanations and the courses and distances of the patents, all three of them call for it as the end of the first line of "Moore's part of Barbadoes Enlarged," and "Gilead," and as the beginning of "Gedor."

Now take the third plat. The explanations call for lines shaded with green, showing the lands deeded from McKenney and wife to John Chew. There are no such lines on the plat and no location of said deed. It is clear, that the explanations do not refer to this plat at all. The other unintelligible lines and representations and uncertainties on the plats and in the explanations, are too numerous to burden this statement of points. *Budd vs. Brooke,* 3 *Gill. Green vs. McLellan,* 4 *H. & J.,* 200. *Dorsey on Eject.,* 79. 3 *H. & J.,* 9. 3 *G. & J.,* 290.

III. That no one of the patents or deeds offered in evidence by the plaintiffs, is correctly or properly located on the plats. The beginning of no single tract is proved. The patent of "Moore's part of Barbadoes Enlarged" calls for it to begin "at the end of fifty perches, on a line drawn south one degree and a half, west from the beginning of the whole original tract." There is no proof of the beginning of the original tract, or of the direction of a line drawn therefrom.

The patent of the tract of land called "Gilead" calls for a beginning "at two bounded black oaks, and two bounded poplars, standing on the west side of the north branch of the eastern branch of the Potowmack river." The surveyor begins at "A," without any proof of the call. The patent of the tract of land called "Gedor," calls to begin at a bounded white oak standing on the west side of the northwest branch, and near said branch, &c. The surveyor has the beginning of "Gedor" at "B," without any proof of call or branch. The same objection applies to the location of the deed from McKenney and wife to John Chew. *Dorsey on Ejectment,* 51.

The courses and distances are incorrect in each of the patents and the deed located. In the patent of "Moore's part of Barbadoes Enlarged," the 1st, 2nd, 3rd, 25th and 27th courses of the survey do not follow the patent; the 6th course is not in the patent at all.

In the patent of "Gilead," the 2nd, 9th, 10th, 11th, 16th and 19th courses do not follow the patent.

In the patent of "Gedor," the 6th course does not follow the patent.

The deed from McKenney and wife to John Chew is not properly located, because the deed calls for two plats accompanying it marked "No. 1 and No. 2," which are not located on the plats. *Medley vs. Williams,* 7 *G. & J.,* 69. *Mundell vs. H. & L. Perry,* 2 *G. & J.,* 93.

IV. That the deeds from George and P. D. Moore to Nicholas Lingan, and James James to Nicholas Lingan, were not admissible in evidence, because they were not located on the plats. *Blessing vs. House's Lessee,* 3 *G. & J.,* 307.

V. That the Court below properly rejected the evidence offered in the plaintiff's 3rd, 4th and 5th exceptions, because said patents and deeds offered in evidence not being correctly located on the plats were not admissible, nor was any evidence *aliunde* of the correctness of the several locations admissible, the instructions to the surveyor and the counsel of the plaintiffs' being merely the declarations of the party. *Pennington vs. Bordley,* 4 *H. & J.,* 457, 58, 73. *Hammond vs. Ridgley,* 5 *H. & J.,* 254, 55, 56. *Rogers vs. Moore,* 7 *H. & J.,* 146. *Thomas' Lessee vs. Godfrey,* 3 *G. & J.,* 142. *Getting's Lessee vs. Hall,* 1 *H. & J.,* 22.

VI. The counter-location of defendant is only for the purpose of putting the plaintiff to the proof of the correctness of his locations; it may be fanciful. In this case the counter-location began at "E," and must necessarily be

different if the lines were the same as in plaintiff's loca-
tion, which began at "A."

BARTOL, J., delivered the opinion of this Court.

By the Act of 1852, ch. 177, several important changes
were made in the law governing proceedings in ejectment,
but by the 11th section, all cases then pending were ex-
cepted from its operation. Afterwards, when the provi-
sions of the Act of 1852 were incorporated in the Code, it
was provided, Article 1, sec. 1, that all suits then pending
should be proceeded with to final judgment as if this Code
had not been adopted.

This suit having been instituted before the passage of
the Act of 1852, must be governed by the pre-existing law ;
neither the provisions of that Act nor of the Code having
any application to the case.

The appeal comes before us upon six bills of exceptions,
taken by the plaintiff below to the ruling of the Circuit
Court, in refusing to allow the several patents and deeds
offered in evidence to be read to the jury, on the ground
that they had not been located on the plats.

These will be severally examined in the light of a few
familiar and well established rules of law applicable
to the questions presented, which will be first stated.

1st. No title paper not properly located on the plats is
admissible in evidence. 3 *G. & J.*, 307. "But when the
grant and the deed are the same, location of both is unne-
cessary." *Dorsey on Ejectment*, 46, 47. "So where the
whole of a tract is located on the plats, a deed conveying
the whole may be given in evidence though not itself lo-
cated." *Beall vs. Bayard*, 5 *H. & J.*, 127. *Hall vs.
Gittings*, 2 *H. & J.*, 383. "Two deeds, one for a specific
portion and the other for the residue of the same tract, the
patent being located, were received in evidence without
being otherwise located." *Hall vs. Gough*, 1 *H. & J*, 119.

2nd. Certainty is required in locations, and "where the title paper is so unintelligibly represented on the plots and explanations, as that it is almost impossible for either the Court or jury to say whether the locations are truly made, such title paper cannot be used as proof." *Budd vs. Brooke,* 3 *Gill,* 227, 228.

3rd. When a party takes defence on warrant, and the plaintiff has located his pretensions, such location is admitted, unless the defendant counter-locates. (See *Dorsey,* 56, and cases cited, *note* 8.) If the counter-location covers the same ground as the locations of the plaintiff, it is equally an admission of the correctness of the latter.

4th. Where the same title paper is located by both parties in the same manner, covering the same ground, the location is binding upon both, and neither is allowed to dispute its correctness. *Armstrong vs. Risteau,* 5 *Md. Rep.,* 256, 275, 276.

The first exception was taken to the refusal of the Circuit Court to admit as evidence the patent of "Moore's part of Barbadoes Enlarged," granted to George Moore on the 21st of February, 1761.

The same patent was afterwards offered with the proposal to accompany it with certain proof mentioned in the third exception, and again offered in the sixth exception, on the ground that it had not been counter-located by the defendant. It is immaterial to consider the third exception further than to say it involves the same question as the first, because unless the paper was admissible upon other grounds, it would not be rendered so by the other proof offered in connexion with it.

In support of the ruling below, and to show that this patent has not been properly located, the counsel for the appellees has called our attention to several supposed discrepancies between the table of courses and distances accompanying the plat and those named in the patent, upon a care-

ful examination of which it appears that they are the same. The sixth line S. 80°, W. 14 perches, which had been omitted in the transcript, has been supplied by agreement of counsel. In the patent the following courses and distances are given viz: 2nd. E. 18°, S. 183 p. 3rd. N. B. E. 39 p. 14 S. B. W. 66 p. 19th W. B. N., 85 p. 25th E. B. S. 150 p. 26th N. B. E. 150 p. These are stated in the table accompanying the plat as follows: 2nd. S. 72°, E. 183 p. 3rd. N. $11\frac{1}{4}$°, E. 39 p. 14th. S. $11\frac{1}{4}$°, W. 66 p. 19th. N. $78\frac{3}{4}$°, W. 85 p. 25th. S. $78\frac{3}{4}$°, E. 150 p. 26th. N. $11\frac{1}{4}$°, E. 150. These are identically the same; there is no discrepancy between them. It is objected by the appellees that no proof was taken on the survey to establish the true beginning called for by the patent. The answer to this objection is, that there has been no counter-location of this tract by the defendants, and the patent having been located by the plaintiff, ought to have been admitted in evidence.

The same observations will apply to the patent of "Gilead," dated the 13th of April, 1750, mentioned in the fourth exception, and the patent of "Gedor," dated the 19th of September, 1728, mentioned in the fifth exception.

The counsel having, by agreement, corrected the ninth line in the patent of Gilead, so that it shall read N. 15°, E. 66 perches, it appears that the tables of courses and distances accompanying the plats correspond respectively with the lines in the patents, with the single exception of the 11th line of Gilead, which in the table is S. $68\frac{1}{2}$°, W. 32 p., instead of N. $68\frac{1}{2}$°, W. 32 p., as it is in the patent; it is evident this is a mere clerical error which may be corrected by a glance at the plat, and besides it is correctly stated in one of the tables returned by the surveyor. Neither of these tracts of land having been counter-located by the defendants, the plaintiff's locations must be taken as correct, and there was, therefore, error in refusing to admit the patents in evidence.

The deed from McKenney and wife to John Chew, dated the 17th of August, 1814, offered in evidence by the plaintiff, and referred to in the second exception, ought to have been admitted, because the same deed was also located by the defendants in the same manner, and under the rule before stated the defendants were thereby precluded from disputing the correctness of the location.

As to the deed from George and Peter D. Moore to Nicholas Lingan, and the deed from James James to Nicholas Lingan, mentioned in the second exception, we are of opinion they ought to have been admitted in evidence. These deeds purport to convey, the former two-thirds, and the latter one-third of "Moore's part of Barbadoes Enlarged," patented to George Moore on the 21st of February, 1761, as described in the patent, and, also, a tract of land conveyed by James Pearre, by the name of "Addition to Barbadoes," being part of a tract of land called "Gedor," to George Moore, by indenture bearing date the 11th day of August, 1744, for twenty acres, more or less, which said last mentioned parcel is described by metes and bounds in the deed.

These deeds were not specifically located, but by the location of "Moore's part of Barbadoes Enlarged, "Gedor," and the location of the deed of McKenney and wife to John Chew, in which last the same parcel of twenty acres, as a part of Gedor, is described, it is manifest that the same lands described in the deeds of G. and P. D. Moore and James James to Lingan, are correctly located and described on the plats. Besides, the surveyor has distinctly marked on the plats the plaintiff's claim and pretensions to part of "Gedor," and the table of courses and distances accompanying them, when closely examined, will be found to correspond with those in the deed from Moore to Lingan, allowing a variation of two degrees.

Langley's Lessee *vs.* Jones et als.

Under the rule before stated no other or further location of these deeds was necessary.

This Court being of opinion that the objection urged by the appellees to the admissibility in evidence of the several patents and deeds mentioned in the bills of exceptions, on the ground that they have not been located on the plats, is not well taken, and that there was error in rejecting them, the judgment will be reversed and a *procedendo* ordered.

It seems to us to be manifest from the record, that there is in reality no dispute between the parties in regard to locations.

The land claimed in the declaration is the same as that described in the deed from McKenney and wife to John Chew, which has been located by both parties in the same manner ; and the several locations made by the defendants are of identically the same land, there is no conflict as to the lines. The real question in dispute appears to be in regard to title only ; and while under the plea of not guilty, the *onus* of establishing a good title is upon the plaintiff, he may commence with any part of his evidence, and is not compelled to pursue any particular order of proof in tracing his title. *Caton vs. Carter,* 9 *G. & J.,* 476. *Naylor vs. Bowie,* 3 *Md. Rep.,* 258. *Warner vs. Hardy,* 6 *Md. Rep.,* 525.

*Judgment reversed and procedendo.*