LOUIS F. LANNAY and PRISCILLA LANNAY's Lessee *vs.* GREENBURY B. WILSON, and others.

*Title requisite to sustain the Action of Ejectment—Mortgagee's Title in Morgaged Premises — Sales under Decrees of Court—Right and Privileges of Purchasers at such Sales — Presumption of the existence of Deeds from the Lapse of Time, and where it is a Trustee's duty to convey — Interest and remedy of Mortgagees, where the Debt secured is Joint—Instructions to the Jury.*

To enable a plaintiff to recover in ejectment, he must show in himself a good and sufficient title to the land claimed. He can derive no assistance from the defects in the defendant's title, for possession is presumptive evidence of right, and the defendant cannot be deprived of his possession by any person except the party who has the *jus possessionis.*

If the defendant can answer the claim and pretension on the part of the plaintiff, by showing the *legal title or right of possession,* to be in a stranger, it will be sufficient for his defence, even though he may not be able to show that he holds under or in privity with the real owner.

When the plaintiff shows a *prima facie* good title, it is incumbent on the defendant setting up an outstanding title by way of defence, to establish the existence of such title with clearness and precision ; and generally a title of such nature as to entitle the stranger to recover in ejectment, against either of the contending parties.

It is not incumbent on the plaintiff to negative the existence of such outstanding title, but it is the duty of the defendant to make its existence clear and certain, in order to make it available as a defence.

To maintain the action of ejectment, the claimant must be clothed with both the *legal title* and the immediate *right of possession ;* and whatever divests the plaintiff of either his legal interest or his right of possession, takes from him the remedy of ejectment.

The action of ejectment is a fiction founded on the principle that the tenant in possession, is a wrong doer *as against the plaintiff ;* and, unless he is so at the time the action is brought, the plaintiff cannot recover.

Where mortgagees are purchasers at the sale of the mortgaged premises under a decree of Court, it requires no deed from the trustee to invest

them with the legal title. The decree and sale made under it, does not divest them of the *legal* estate previously held by them.

A sale by a trustee, appointed by a decree for the purpose, is a judicial sale, and binds and concludes all the parties to the cause who may have right or claim; and the Court passing the decree, has ample power to make its jurisdiction effectual, by putting the purchaser in possession of the premises sold by its authority.

Although such decree of sale does not operate as a conveyance of the legal title, the purchaser holding possession under it, does not hold wrongfully or unlawfully; and consequently, all right of possession of those bound by the decree and the proceedings under it, other than the purchaser, is divested and taken away.

A purchaser under a decree in equity, becomes the substantial owner of the property from the moment of final ratification of the sale, and he is entitled to and can recover the rents and profits of the estate.

He is not only entitled to the possession of the property, but it remains at his risk, notwithstanding the legal title may not be conveyed.

By such sale, the dry legal title and the right of possession often become completely severed, at least for a time; the legal title remaining in some of the parties to the cause, while the equitable estate and right of possession become vested in the purchaser.

A trustee's sale under a decree of Court, was made in 1815. Upon eject- ment brought for the land, in 1863, HELD:

1st. That after the lapse of time since the sale, ample ground is afforded for presuming a deed from the trustee to the purchaser: Such presump- tion is an inference of law and not of fact, and is allowed to prevail whenever it is the declared *duty* of a trustee to convey to the beneficial owner at a specified time, or on the happening of a certain event, as on the payment of the purchase money.

2d. Such presumptions are indulged upon principles of public policy for the protection of ancient rights and possessions, and to prevent litiga- tion, and not because the deed presumed, is believed ever to have had an existence in point of fact.

The interest in mortgagees, or assignees of a mortgage, where the debt secured is *joint*, so far partakes of the nature of the debt secured, that for all remedial purposes, the doctrine of survivorship applies as well to the estate as to the debt.

If, therefore, one of the mortgagees in such a case dies, the survivor or survivors may proceed in his or their own name or names to foreclose;

and it is not necessary to make the heir or personal representative of the deceased mortgagee a party.

An instruction that there was no evidence in the cause on which the plaintiff could recover, is in form too general and sweeping.

APPEAL from the Superior Court of Baltimore City.

This action was instituted in the Circuit Court for Baltimore county, on the 25th of November, 1863, and was removed to the Superior Court of Baltimore city, May 25th, 1864.

At the trial of the cause below, the defendant offered, in addition to the mortgage deeds, deed of assignment and chancery record, alluded to in the opinion of the Court, oral testimony showing that several persons, of whom John Akehurst was the last, had been in possession of the land in dispute, as tenants of Luke Tiernan, one of the mortgagees who purchased the land at the trustee's sale. The will of David Williamson was then read. It was probated February 21st, 1839, and devised all his estate of every description to Maria Williamson, his wife.

The defendant then produced a writing in the form of a deed dated 15th July, 1850, from Maria Williamson and Luke T. Williamson to Greenbury B. Wilson, purporting (for a consideration of $2,000,) to convey to said Wilson, all the respective right of the grantors, in law and equity or otherwise, in "the farm and improvement heretofore occupied by John Akehurst, lying in Baltimore county, called Lower Pimlico, containing about two hundred and eighty acres of land, more or less, and which is now occupied by Leonard Ghast, as the tenant of the said Luke T. Williamson." The signatures of Maria Williamson and L. T. Williamson were proved, but no proof being produced that the paper had been acknowledged or recorded, it was not allowed to go in as evidence of title, but (subject to legal exception,) was received to have such effect as it might be found entitled to, to show color of title.

The plaintiff proved that the trustee was appointed judge in 1816, and so continued till his death in May, 1850, when there was found, carefully preserved amongst his papers, the three promissory notes, each for $4,045.80, which had been taken for the Lannay purchase money. And the genuineness of the signatures to these notes—which were signed by David Williamson, Luke Tiernan and Kennedy Owen, was also proved. The plaintiff further produced the record of an action in Baltimore County Court, which the said Nicholas Brice, on the 25th of April, 1830, brought against David Williamson and Luke Tiernan, survivors of Kennedy Owen, for the recovery of said purchase money, declaring on said three promissory notes. Both defendants were taken, and, having appeared by attorney, pleaded non-assumpsit and limitations to the whole demand. At February Term, 1831, the death of David Williamson was suggested, and the plaintiff was non-suited.

The plaintiff's counsel then presented two prayers, setting out the facts of the case and asking that the jury, if it should find such to be the facts, be instructed to give a verdict for the plaintiff. Both were refused by the Court. The prayers which had been offered by the defendant were withdrawn, and the Court instructed the jury "that there was no evidence in the cause upon which the plaintiff could recover any part of, or interest in the land in controversy." To this ruling the plaintiff excepted, and the verdict and judgment being against him, he appealed. The remaining facts will be found sufficiently detailed in the opinion of the Court.

The cause was argued before STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.    •

*Arthur W. Machen* and *I. Nevett Steele*, for the appellants:

Has the defendant shown any title *in himself?* Confessedly, none. Had the deed from Maria Williamson and Luke T. Williamson to the defendant been sufficiently proved, what

had the grantors to convey? But it is a concession in the case that that deed was not before the jury as an instrument capable of conveying title. It cannot be claimed that he acquired a right by adversary possession. For his possession did not *begin* till 1850. It is clear then that Greenbury B. Wilson himself had neither title nor such possession as may stand in lieu of title.

It is a well established rule that the title in a stranger which is to avail as a defence in ejectment, must be *a clear subsisting title outstanding in another, and such a title as the stranger could recover on in ejectment against either of the contending parties.* *Hall vs. Gittings*, 2 *H. & J.*, 125; *George's Creek Coal and Iron Co's Less. vs. Detmold*, 1 *Md.*, 234; *Butler's N. P.*, 110; *Foster's Lessee vs. Joice*, 3 *Wash. C. C.*, 501; *Peck vs. Carmichael*, 9 *Yerg.*, 325; *Jackson vs. Hudson*, 3 *John.*, 386; *McDonald vs. Schneider*, 27 *Mo.*, 405; *Dickinson's Lessee vs. Collins*, 1 *Swan*, (*Tenn.*,) 516; *Foust vs. Ross*, 1 *W. & Serg.*, 506; *Hunter vs. Cochran*, 3 *Barr*, 105; *Hickey's Lessee vs. Stewart*, 3 *How.*, 750.

Applying this rule to the evidence produced by the defendant, can he set up an outstanding title in the heirs of Williamson, Tiernan and Owen, in consequence of the mortgage to those parties by Lannay? *Greenleaf's Lessee vs. Birth*, 6 *Pet.*, 302, 312; *Giles vs. Baremore*, 5 *Johns. Ch.*, 552; *Wilson vs. Witherby*, *Ball. N. P.*, 110; *Boyd vs. Harris*, 2 *Md. Ch. Dec.*, 210, 214; *Morgan's Lessee vs. Davis*, 2 *H. & McH.*, 18; *Moreau vs. Detchmendy*, 18 *Missouri*, 522; *Jackson vs. Wood*, 12 *Johns.*, 242; *Moore vs. Cable*, 1 *Johns. Ch.*, 385; *Paxon's Lessee vs. Paul*, 3 *H. & McH.*, 399.

The next inquiry is, can a title be set up as outstanding in the heirs of Williamson, Tiernan and Owen, under their purchase from the trustee. It is settled law in this State that a sale and ratification cannot tranfer the legal estate, and that a deed from a trustee is indispensable. *Massey vs. Massey's Lessee*, 4 *H. & J.*, 141; *Hickey's Lessee vs. Stewart*, 3 *How.*, 750.

It is impossible to presume a deed in face of the fact that the purchase money was never paid. The nature of the resistance made to the suit brought by the trustee upon the notes taken for the purchase money, would rather indicate that the defendants had repudiated the purchase itself as well as the obligations growing out of it. Proof of actual payment by the vendee is absolutely necessary in order to justify a presumption of a conveyance from vendor to vendee. *Brady vs. Begun*, 36 *Barb.*, 538; *Lawrence vs. Ball*, 14 *N. Y.*, (4 *Kern.*) 477; *Morey vs. Farmers' Loan & Trust Co.*, 14 *N. Y.*, 302; *Mundell vs. Clerklee*, 3 *H. & J.*, 468; *Doe vs. Butler*, 2 *Wend.*, 152, 153.

A conveyance from the trustee would have been a breach of trust on his part, and therefore cannot be presumed. *Keene ex dem., Lord Byron vs. Deardon*, 8 *East*, 248.

If a purchaser who has not paid the consideration, nor obtained a conveyance, has any legal estate, it is at most but a tenancy at will, which, in this case, would be determined by the death of Luke Tiernan, the tenant at will. *Howard's Lessee vs. Carpenter,* 22 *Md.*, 25; *Ball vs. Cullimore*, 5 *Tyrw.*, 753, 755; *Dupper vs. Mayo*, 1 *Wms. Saund.* 276 *b.*; *Doe d. Stanway vs. Rock*, 1 *Car. & Marsh.*, 549, (41 *E. C. L.* 299.) *James vs. Dean*, 11 *Ves.*, 391.

Even if the possession of the purchasers had been complete and exclusive, and had been continuously maintained, the evidence so explains it, and discloses the qualified character of the right under which it was taken, that no presumption of a legal title could be founded on it. *Jackson vs. Porter, Paine C. C.*, 457; *Colvin vs. Warford's Lessee*, 20 *Md.*, 357, 395; *Owings vs. Norwood*, 2 *H. & J.*, 100; *Bowie vs. O'Neale*, 5 *H. & J.*, 226, 231; *Beall vs. Lynn*, 6 *H. & J.*, 351; 1 *Phill. Evid.*, 668–71, 678; *Nieto vs. Carpenter*, 21 *Calif.*, 455.

On the whole, it is manifest that if the representatives of the purchasers at the chancery sale have any right, it is of a purely *equitable* character, and can only be worked out in the Court of Equity. They have no legal estate—least of all

such an one as Greenbury B. Wilson, a stranger to it, could set up. If they go into equity they can be required to do equity. The Court of Chancery found Lannay in possession; why should his possession be taken away except by the act of the Court? *Palmer vs. Jackson,* 5 *Brown Parl. Cases,* 281.

In this connection, it may be observed that the mortgage interest of Riddle, who had died before the filing of the bill, was not represented in the chancery suit, and *no good title could be made under the decree. Vickers vs. Cowell,* 1 *Beav.,* 529 ; *Palmer vs. Carlisle,* 1 *Sim. & Stu.,* 423 ; *Coote on Mortgages,* 500, 510, 511, (70 *Law Lib'y,* 575.)

The bill in question having been filed before the passage of the Act of 1833, ch. 181, the *heirs* of Riddle, as well as his personal representatives were necessary parties. *Worthington vs. Lee,* 2 *Bland,* 684, 685.

In any view that can possibly be taken of the whole evidence, the defendant's case involved matters of fact relating to possession, without which no defence could be made out, and upon these facts, it was necessary for the jury to pass; and the learned judge erred in assuming the functions of the jury, and peremptorily instructing them to find a general verdict for the defendant. *Maltby vs. Northwestern Va. R. R. Co.,* 16 *Md.,* 445 ; *Keener vs. Kauffman,* 16 *Md.,* 296.

*Benjamin F. Horwitz* and *Robert J. Brent,* for the appellees :

It is the settled law of Maryland that the plaintiff in ejectment must recover, if at all, on the strength of his own title, and cannot do so because of the weakness of that of the defendant: he is bound to show that he had *both* the *legal* title to the land and the right of entry or *possession* at the time the action was instituted, and must exhibit a case negativing the idea of an outstanding title. *Wilson's Lessee vs. Inloes,* 11 *G. & J.,* 358 ; *Mitchell's Lessee vs. Mitchell,* 1 *Md.,* 52, 55 ; *Dorsey on Ejectment,* 31.

The execution of the mortgages by Lannay to Brice and Williamson and others, conveyed the *legal* title to the land to

the mortgagees, with the right of immediate *possession*. *Jamieson vs. Bruce*, 6 *G. & J.*, 74; *Evans vs. Merriken*, 8 *G. & J.*, 46; 1 *Powell on Mortgages*, 171.

*After default* the legal title was completely vested in the mortgagees—indefeasible at law. *McElderry vs. Smith*, 2 *H. & J.*, 74.

Such legal title can only be extinguished by a release of the mortgage, or a re-transfer of the legal title, executed in due form of law. The payment of the amount due would entitle the mortgagor to go into a Court of Equity and compel a release, but gives him no standing in a *Court of Law*. *Barnes vs. Crow*, 4 *Bro. Ch. R.*, 7; *Hill vs. Payson*, 3 *Mass.*, 559; 3 *Powell on Mortgages*, 1085 *f.* 1086; 2 *Greenleaf on Evidence*, sec. 330.

The decree of the Chancellor merged the mortgage. After the decree there was in fact no mortgage, and consequently the *title* of Lannay in the property was entirely *extinguished*. Such is the effect of a judgment at law. *Bank of U. S. vs. Merchants' Bank*, 7 *Gill*, 415. Decrees in Chancery have the same effect as judgments at law. 1 *Greenleaf on Evidence*, sec. 551; *Wagner, &c. vs. Cohen*, 6 *Gill*, 104.

After the decree, and before sale, the possession of, and title to the property are vested in the Court. *Tessier vs. Wyse*, 3 *Bland*, 60; *Wagner vs. Cohen*, 6 *Gill*, 103. This must be so, for the sale of a trustee is a sale *by the Court* to the purchaser. The trustee being but the agent of the Court to make the sale. *Cunningham vs. Schley*, 6 *Gill*, 228; *Goldsborough vs. Ringgold*, 1 *Md. Ch. Dec.* 241; *Glenn vs. Clapp*, 11 *G. & J.*, 8; *Bolgiano vs. Cook*, 19 *Md.*, 391.

The sale of the property in this case, therefore, and its final ratification by the Chancellor, was a "final and conclusive decree," completely divesting Lannay of all estate, right, title and interest therein, and gave the right of possession to the purchasers—which, if it had not been surrendered by Lannay, the Chancellor had the power to order. *Brown vs. Gilmor*, 8 *Md.*, 322; *Tongue vs. Morton*, 6 *H. & J.*, 21; *Frazier vs.*

*Palmer,* 2 *H. & G.*, 469; *Alexander's Ch. Prac.*, 153. After final ratification the purchaser is regarded as *owner* from the day of sale. *Wagner vs. Cohen,* 6 *Gill,* 102.

The auditor's account, finally ratified, shows that the purchasers much more than paid the entire purchase money for the property; the final ratification of that account was equivalent to the Court's ordering Brice to pay the money to Williamson and others, the mortgagees and purchasers. *Lee vs. Admin'rs of Boteler,* 12 *G. & J.,* 323; *Wayman vs. Jones,* 4 *Md. Ch. Dec.,* 500; *Richardson vs. State,* 2 *Gill,* 443.

Even if this did not appear from the proceedings, then, after such a great lapse of time, payment would be *presumed,* especially in a case like this, where the purchasers and those claiming under them have been in possession over fifty years. *Mitchell vs. Mitchell,* 1 *Gill,* 82.

It will be presumed, after the lapse of so many years, accompanied by possession, under claim of title, that Brice performed his duty, and executed a deed to the purchasers, if a deed be necessary to perfect their legal title. *Casey vs. Inloes,* 1 *Gill,* 490 *and* 505; *Connely vs. Bowie,* 6 *H. & J.,* 141; *Burke vs. Negro Joe,* 6 *G. & J.,* 136; *Beale vs. Lynn,* 6 *H. & J.,* 351; *Carroll vs. Norwood,* 1 *H. & J.,* 172; *Shilknecht vs. Eastburn,* 2 *G. & J.,* 114.

But, after the final ratification of the sale, and the payment of the purchase money, no deed is required to pass the legal title, any more than in the case of a sale of realty, by a sheriff, under *fi. fa. Keys, &c. vs. Goldsborough's Lessee,* 2 *H. & J.,* 369; *Boring's Lessee vs. Lemmon,* 5 *H. & J.,* 223; *Estep vs. Weems,* 6 *G. & J.,* 306.

The case of *Massey vs. Massey,* 4 *H. & J.,* 141, does not conflict with this view; the question was not decided by the Court of Appeals. The plaintiffs, however, according to any view, have *neither* the *legal* title, *nor* the right of *possession,* and, consequently, cannot recover any more than the representatives of any other owner of a piece of real estate, who, fifty years ago, conveyed away the legal title and delivered

up possession of the property to the purchasers. On the other hand, the defendant is shown to have entered under color of title, proved by the deed and written transfer of possession to have been acquired through the purchasers from the trustee, which purchasers had a perfect title.

Judge Martin was justified in deciding that there was no evidence of title, by the principle of law, which asserts that presumptive evidence has all the effect of positive evidence, if not rebutted. *Kelley vs. Jackson,* 6 *Peters,* 622; *United States vs. Wiggins,* 4 *Peters,* 336; *Elliott vs. Knott,* 14 *Md.,* 124, 135.

Alvey, J., delivered the opinion of the Court.

This is an action of *ejectment,* instituted on the 25th of November, 1863, by the devisees of Louis J. Lannay, to recover two hundred and forty-five and a half acres of land, lying in Baltimore county, comprising parts of three tracts, called "Labyrinth," "Brother's Choice," and "Enlargement."

It is unquestioned that Lannay, the devisor, acquired in 1801, legal *seisin* of $184\frac{3}{4}$ acres, part of the land sued for, and that he became legally seized of the remaining $60\frac{3}{4}$ acres, in 1810, having had the equitable *seisin* thereof from 1801.

The leading question in the case, as presented by the prayers rejected, and the instruction given by the Court below, is, whether Lannay, the devisor, in his life time, so far divested himself of title to, or the right of possession of the land in controversy, as to defeat the right of recovery by his devisees.

It is certainly a familiar principle in the law of ejectment, that, to enable the plaintiff to recover, he must show in himself a good and sufficient title to the land claimed. He can derive no assistance from the defects in the defendant's title, for possession is presumptive evidence of right, and the defendant cannot be deprived of his possession by any person except the party who has the *jus possessionis.* If, therefore, the defendant can answer the claim and pretension on the

part of the plaintiff, by showing the *legal title or right of possession*, to be in a stranger, it will be sufficient for his defence, even though he may not be able to show that he holds under or in privity with the real owner.

It is unquestionably true, that, where the plaintiff shows a *prima facie* good title, it is incumbent on the defendant, setting up an outstanding title by way of defence, to establish the existence of such title with clearness and precision; and generally a title of such nature as to entitle the stranger to recover in ejectment against either of the contending parties. *Hall vs. Gittings*, 2 *H. & J.*, 125. It is not incumbent on the plaintiff to negative the existence of such outstanding title, but it is the duty of the defendant to make its existence clear and certain, in order to make it available as a defence. *Greenleaf's Lessee vs. Birth*, 6 *Pet.*, 302. But when we speak of an outstanding title, we must be understood as having reference to the nature and character of the action of ejectment. To maintain the action, the claimant must be clothed with both the *legal title*, and the immediate *right of possession*. These are the essential conditions of success. *Wilson vs. Inloes*, 11 *G. & J.*, 351. Without a legal interest and a possessory title, not barred by the statute of limitations, no plaintiff can recover in an action of ejectment, by the law of this State. Whatever, therefore, divests the plaintiff of either his legal interest, or his right of possession, takes from him the remedy of ejectment. For, as was said by LORD MANSFIELD, in *Atkins vs. Horde*, 1 *Burr*, 119, "an ejectment is a possessory remedy, and only competent where the lessor of the plaintiff may enter; and every plaintiff in ejectment must show a right of possession as well as of property." The action is a fiction, founded on the principle that the tenant in possession is a wrong doer, *as against the plaintiff;* "and unless he is so at the time the action is brought, the plaintiff cannot recover." *Doe vs. Jackson*, 2 *Dowl. & Ryl.*, 523, *S. C.*, 1 *B. & Cres.*, 448.

Had Lannay, then, at the time of his death, in 1835, a legal interest in and a possessory title to the land in controversy?

For if such right did not then exist, it is not contended that it has been subsequently acquired by his devisees. It appears that Lannay, on the 22d of July, 1803, being indebted to Nicholas Brice, executed a mortgage to him of the 184¾ acres, part of the land in controversy, of which he was then legally seized ; and on the 30th of May, 1808, joined with Brice in a deed of assignment of such mortgage to David Williamson, Luke Tiernan, Robert Riddle, and Kennedy Owen, for and in consideration of the sum of $4,395.05, paid by the assignees to Brice; that being the amount then due from Lannay to Brice, on account of the mortgage and other claims. At the time of this assignment Lannay held but an equitable estate in the 60¾ acres, the residue of the land claimed, and one object of his joining Brice in the assignment seems to have been to embrace in the mortgage these 60¾ acres, so held by him, as additional security for the money advanced and to be advanced by the assignees or new mortgagees, under the terms and conditions of the deed of the 30th of May, 1808 ; and he therein covenanted to make any further mortgage that might be necessary to effectually charge the whole on the lands and premises mentioned. He finally acquired the legal title to the 60¾ acres by deed, dated the 21st of July, 1810 ; and on the 25th of July, 1810, he made another mortgage of the 184¾ acres to James H. McCulloh for the sum of $12,000.

Having thus incumbered his land, Lannay, on the 20th of November, 1812, formally acknowledged that the mortgaged premises stood justly bound to Williamson, Tiernan, Riddle, and Owen, for and on account of advances under the assignment and mortgage of the 30th of May, 1808, over and above the sum paid to Brice in the sum of $9,399.07. This sum, together with the sum of $4,395.05, paid to Brice, and the sum of $12,000, owing to McCulloh, with the interest thereon, constituted the mortgage incumbrance on the land, when, in December, 1813, Williamson, Tiernan, and Owen, survivors of Riddle, filed their bill in the Court of Chancery against Lannay and McCulloh for a sale of the mortgaged premises.

Both Lannay and McCulloh answered the bill, admitting the existence of the mortgages and the amount of the indebtedness as stated; and they subsequently consented to a decree being passed forthwith for the satisfaction of all having an interest in the matter. And accordingly a decree for sale was passed on the 23d of May, 1815, and a trustee appointed to make the sale. The trustee gave bond as required, and proceeded to sell as directed by the decree. The land was sold in two parcels to one John McClure for the aggregate sum of $12,137.40. The purchaser soon after, and before the sale was reported, assigned his purchase to the complainants in the bill, and they became substituted as purchasers, and were so reported by the trustee. The sale, thus reported, was finally ratified and confirmed, and the proceedings were referred to the auditor to state an account, which was done, and that was also finally ratified by the Chancellor. By the auditor's account, the proceeds of sale were first applied to the payment of the trustee's commissions, expenses, and the costs of suit, and the balance *in part* satisfaction of the complainant's claim; the claim then being, according to the account of the auditor, $16,107.83, and largely in excess of the proceeds of sale. After the sale of the property, Lannay was manifestly insolvent, and remained so; and there is no pretence whatever that any part of the mortgage debts was ever paid by him, otherwise than by the application of the proceeds of sale. He remained on the premises until some time about the close of the year 1816, when he removed from and voluntarily *surrendered* them to the tenant of Tiernan, one of the purchasers. He, from that time, lived in the immediate neighborhood, and was of course aware of the possession of and dominion exercised over the property by the purchasers; but it does not appear that either he, or his devisees after his death, ever entered upon, or attempted to exercise any such acts of ownership over the property as would indicate an adverse claim thereof to the purchasers; while, on the other hand, the purchasers, and those claiming under them, possessed and con-

trolled the property from the time of Lanney's surrender of it in 1816, to a recent period.

These are plainly the facts of the case, and we discover nothing in the record upon which any presumption could be founded, tending in the slightest degree to countervail them, or to overcome their force and effect.

It is contended, however, that as it does not appear that the purchase money was *actually paid* over to the trustee by the substituted purchasers, and that as no deed by the trustee appears to have been made for the land sold, the purchase itself is, therefore, to be regarded as ineffectual, the rights of the parties under the mortgages to be considered as extinguished by the lapse of time, and that the former legal title of Lannay has become available to entitle the lessors of the plaintiff to recover in this action.

To this proposition we cannot assent, in view of the facts disclosed by the record before us.

As to the payment of the purchase money, that is fully explained by the auditor's report. The claim of the purchasers was preferred, and it was much greater than the amount of the proceeds of sale; and it would have been a very useless— to say nothing of it as a senseless—ceremony, to have required the purchasers to pay over the money that the Court had adjudged to belong to them, in order that the trustee might go through the form of paying it back. The taking of the notes for the purchase money was matter of strict observance of the terms of the decree, and was before the amount of the complainants' claim had been finally adjudicated; and that they were found among the papers of the deceased trustee, has no significance, in the light of the other facts of the case.

Nor can the plaintiffs derive assistance to their right to recover from the absence of a deed from the trustee. In $184\frac{3}{4}$ acres of the land claimed, the purchasers by substitution held the legal title by virtue of the deed to them of the 30th of May, 1808; and in the remaining $60\frac{3}{4}$ acres they held the equitable estate. The decree itself, and the sale made under

it, did not divest them of the *legal* estate previously held by them. It required no deed from the trustee to invest them with the legal title to that portion of the land for which they had sufficient muniment. A sale by a trustee, appointed by a decree for the purpose, is a judicial sale, and binds and concludes all the parties to the cause who may have right or claim; and the Court passing the decree, has ample power to make its jurisdiction effectual by putting the purchaser in possession of the premises sold by its authority. And though the decree does not operate as a conveyance of the legal title, the purchaser, holding possession under it, does not hold wrongfully or unlawfully; and, consequently, all right of possession of those bound by the decree, and the proceedings under it, other than the purchaser, is divested and taken away, and, of course, with it the right to maintain ejectment. To determine otherwise, would be to embarrass and render insecure the larger portion of our judicial sales. A purchaser under a decree in equity, becomes the substantial owner of the property from the moment of final ratification of the sale, and he is entitled to and can recover the rents and profits of the estate. He is not only entitled to the possession of the property, but it remains at his risk, notwithstanding the legal title may not be conveyed. By such sale the dry legal title, and the right of possession often become completely severed, at least for a time,—the legal title remaining in some of the parties to the cause, while the equitable estate and right of possession become vested in the purchaser. And such was the case in the present instance, in relation to the 60¾ acres, the legal title to which remained in Lannay at the time of the decree. But it does not by any means follow that, because the naked legal title to such part of the land remained in him, that his devisees are entitled to recover it in this action. One of the requisites is wanting, that of the right of possession.

There is, however, another view to be taken of this case, which is equally opposed to the plaintiffs' right to recover, as the one just considered.

It is not pretended but that all the land sued for in this action was embraced in the deed of the 30th of May, 1808, and was sold under the decree. Nor is it contended that there have been any such adverse claim and possession of the land by Lannay, or his devisees, since the sale in 1815, as would divest the purchasers of any right that they may have acquired under the judicial sale by the trustee. The purchasers paid the purchase money, and entered into possession, and they certainly acquired the right, under the decree and sale, to the beneficial enjoyment of the property; and, after the lapse of time since the sale, we think ample ground is afforded for presuming a deed from the trustee. And if the Court below had been requested, it would doubtless have instructed the jury, not that they might, as matter of fact, but that they should, as an inference of law, presume the making of such deed to the purchasers. Such presumption is allowed to prevail, whenever it is the declared *duty* of a trustee to convey to the beneficial owner at a specified time, or on the happening of any certain event, as in this case, on the payment of the purchase money; for it is reasonable to presume that the trustee has performed his duty, and done what he has been directed to do, and what a Court of Equity would compel him to do. *England vs. Slade,* 4 *T. R.,* 682; *Doe vs. Sybourn,* 7 *T. R.,* 2. Such presumptions are indulged upon principles of public policy, for the protection of ancient rights and possessions, and to prevent litigation, and not because the deed presumed is believed ever to have had an existence in point of fact. *Casey's Lessee vs. Inloes,* 1 *Gill,* 503, 505.

There being nothing in the case to rebut such presumption that, as matter of course, would have defeated the action. But it has been contended in argument, by the counsel of plaintiffs, that the mortgage interest of Riddle, who had died before the filing of the bill for sale of the mortgaged premises, was not represented in the chancery suit, and that, therefore, no good title could be made under the decree. Such proposition, however, is wholly untenable, as can be easily shown.

The deed of mortgage, or of assignment, of the 30th of May, 1808, was to four persons to secure the payment of an indebtedness due to them *jointly,* and not severally. And, to say nothing of the terms of the deed, which, being made before the Act of 1822, ch. 162, conveyed the estate in joint tenancy, it is now settled that the interest of mortgagees, or the assignees of a mortgage, where the debt secured is joint, as in this case, so far partakes of the nature of the debt secured, that for all remedial purposes, the doctrine of survivorship applies as well to the estate as to the debt. If, therefore, one of the mortgagees dies, the survivor or survivors, as the case may be, may proceed in his or their own name, and do whatever may be necessary to foreclose, or to effect a sale of the mortgaged premises; and in such case it is not necessary to make the heir or personal representative of the deceased mortgagee a party. 7 *Mass.,* 131; 19 *Me.,* 430; 6 *Mich.,* 72; 1 *Wash. on Real Pro.,* 576. The bill, therefore, filed by Williamson, Tiernan, and Owen, as survivors of Riddle, was properly filed, and the title acquired under the decree obtained thereon is not impeachable on the ground suggested by the counsel of appellants.

It follows from what we have said of the facts of this case, that the Court below was right in rejecting the two prayers offered on the part of the plaintiffs; and while the instruction given by the Court, that there was no evidence in the cause upon which the plaintiffs could recover, was in form too general and sweeping to be approved; yet, it is clear that by a more specific and definite instruction, the same result must have ensued, and, consequently, the plaintiffs have not been injured by the instruction given. The judgment will therefore be affirmed.

*Judgment affirmed.*

(Decided 1st June, 1869.)