MARY C. SAUNDERS ET AL.

*vs.*

J. OLAN CLARK, THOMAS' L. DAY, CHARLES F. CHERRY.

*Trustee's sale: purchaser's title; agreement with heirs of mortgagor; adverse possession.*

The purchaser of land at a trustee's sale agreed with the heirs of the debtor that upon payment by them within a certain time of the sum found to be due the trustee under the decree, with interest, etc., the purchaser and the trustee would execute to the said heirs a deed for the property; the heirs occupied the property for a number of years; there was no evidence of their having ever exercised the option; to a bill brought by the heirs against the purchaser to compel the transfer of the property, it was: *Held,* that the mere fact of the purchaser under the decree having refrained for 15 years from any active assertion of his ownership could not, in the absence of competent proof, justify the court in founding a formal judgment adverse to his title, upon the assumption that the condition of the option had been duly performed.       p. 119

The ratification of a trustee's sale invests the purchaser with the substantial ownership of the property.       p. 120

Where there were slight discrepancies in the ways of spelling the name of the purchaser at a trustee's sale, as reported by the trustee, and the name in the deed by which the property

was subsequently conveyed by one purporting to have been the purchaser, it was: *Held,* on appeal, that the presumption was in favor of the action of the judge below who examined the original papers and in favor of the notary public before whom the parties appeared; and that, merely from the fact of the discrepancy appearing in the papers, it could not be presumed that there was no such person as the one purporting to have executed the deed as purchaser of the property.          p. 121

*Decided February 10th, 1916.*

Appeal from the Circuit Court for Caroline County. In Equity. (ADKINS and HOPPER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*T. Alan Goldsborough* (with whom was *William J. Rickards* on the brief), for the appellants.

*Henry R. Lewis,* for the appellees.

URNER, J., delivered the opinion of the Court.

The tract of land, containing thirty-five acres, involved in this suit, was owned and occupied by a certain Perry E. Smith, prior to his death, which occurred in or about the year 1895. The property was subject to a mortgage for $103 executed Feb. 19, 1880, upon which no interest was paid after 1884. A further lien, to the amount of $101, was imposed upon the land, by a judgment against the owner and his wife, on which execution was issued in April, 1893.

These liens were purchased at the request of the debtors by
Hon. Geo. M. Russum, a former member of this Court. They
continued to be held by him, without any payments being
made on account of either principal or interest, until four
years after Perry E. Smith's death, when, in July, 1899, he
obtained a decree for a sale of the property and the applica-
tion of the proceeds to the satisfaction of his claims as as-
signee of the mortgage and judgment. The widow and some
of the children of the deceased owner had remained in posses-
sion of the premises, and they, with all other persons inter-
ested, were made parties to the creditor's proceeding in which
the decree for the sale was passed. JUDGE RUSSUM was ap-
pointed trustee to make the sale, and he subsequently reported
to the Court that he had sold the property to a certain Robert
W. Henutt for the sum of $400. The sale was made on
November 11, 1899. The same day JUDGE RUSSUM, as attor-
ney for the purchaser, and as trustee, signed an agreement
which provided that the trustee and the purchaser would con-
vey the property to Ann M. Smith, the widow of Perry E.
Smith, deceased, upon the payment by her to JUDGE RUSSUM
of the amount due him under the decree, with interest and
costs, and the reimbursement of Mr. Henutt for any expense
he might incur in the meantime for taxes and improvements.
It was stipulated in the agreement, however, that the option
it conferred should be null and void on and after October 1,
1900, if not exercised prior to that date. The sale was not
reported to the Court until July 18, 1900, and was not rati-
fied until the day after the expiration of the option period.
In the following January an Auditor's Report was filed
which charged the trustee with $400 as the proceeds of the
sale to Robert W. Henutt, and, after making provision for
costs, commissions and taxes, applied the net balance of
$273.01 to the partial payment of the indebtedness estab-
lished by the decree, which amounted with interest to $382.67.
The audit was finally ratified in April, 1901.

Ann M. Smith continued to occupy the property with some of her children until her death in 1908. From that time until March 16, 1913, her daughters, Elmira Gould and Rosalie Smith, and the husband of the former, were in possession. The other children had been living away from the place for a number of years, except for occasional visits, one of them, Mary Saunders, having, however, furnished to her mother the money required for the payment of the taxes on the property, which was listed on the assessment records in the names of "Perry Smith's heirs" and "Ann M. Smith's heirs" successively.

By deed dated February 20, 1913, Robert W. Henutt conveyed the land to J. Olan Clark, who, on March 13, 1913, transferred it by deed of that date to Thomas L. Day, and he in turn conveyed it five days later to Charles F. Cherry. In connection with his acquisition of a record title to the property for which he paid about $325 to the agent of the grantor, Mr. Clark effected an agreement with Elmira Gould to give him possession in consideration of the payment to her of a sum approximating $575. The amount thus agreed upon being duly paid, the occupants of the premises thereupon moved away, and Mr. Clark delivered possession to his grantee, who relinquished it to his successor in the title.

The present suit in equity was instituted by the heirs at law of Perry E. Smith, including Elmira Gould, and its object is to have them decreed to be the owners in fee simple of the land in question and entitled to its possession, and to have the title conveyed to them by a trustee to be appointed for that purpose. No question has been raised as to the jurisdiction of the Court to entertain the proceeding. The main theory of the suit is that in view of the long continued occupancy of the property by Ann M. Smith and her children after the termination of the period fixed in the option agreement, the presumption is that the privilege of purchase thereby given was exercised according to its terms. There has been no evidence offered tending to show affirmatively that the option was in reality availed of, but an inference to that

effect is sought to be drawn solely from the circumstance
that the pre-existing tenure of the person to whom the option
was given remained so long undisturbed. This is not a suffi-
cient ground upon which to raise such a presumption. The
mere fact that the purchaser under the decree refrained for
thirteen years from an active assertion of his ownership, cer-
tainly could not, in the absence of competent proof on the
subject, justify the Court in founding a formal judgment
adverse to his title upon the assumption that the conditions
of the option given the occupant of the property, to buy it at
a stipulated price, had been duly performed. Such a con-
clusion appears especially unwarranted when we consider the
course of the proceeding under which the land was sold and
to which the option agreement was incidental. It has been
noted that the agreement was signed on the very day of the
sale under the decree, that the purchase price fixed by the
option was the amount of the indebtedness and costs adjudged
to be chargeable against the property and was to be paid to
the party for whose benefit the decree was passed, that the
sale made under the decree was not formally reported to the
Court until the option period was nearing its end, and was
not ratified until the day after that period had expired, and
that the audit accounted for the exact sum for which the
land was reported to have been sold. These circumstances
tend very strongly to show that the option was not in fact
exercised. The natural inference is that the report and rati-
fication of the sale were deferred upon the theory that if the
occupant of the property availed herself of the right to buy
it upon the terms and within the time stipulated, the con-
summation of the sale to the original purchaser under the
decree would be unnecessary, and that the transaction would
be closed upon the basis of the price, and with the purchaser,
contemplated by the option agreement. It seems reasonably
certain that if the option, to which the trustee was himself a
party, had been actually exercised, the further proceedings
in the equity cause, and particularly the Auditor's Report,
would have given some indication of that fact. The audit

which was not filed until January, 1901, would surely not have shown a deficiency in the application of the proceeds of sale to the indebtedness ascertained by the decree, if the trustee creditor had received under the terms of the option agreement the purchase price for which it provided and which was the full and precise amount of the debt and costs. The theory that the option should be presumed to have been exercised is plainly untenable.

It is further urged on behalf of the plaintiffs that the land in controversy, having been in the exclusive and continuous occupancy of themselves and of, their parents under whom they claim as heirs at law, for more than twenty years, they have acquired a valid title by adverse possession. To dispose of this contention it is only necessary to refer to the fact that all the persons interested in the property were made parties to the creditor's suit instituted in 1899. The decree and ratified sale in that proceeding were effectual and conclusive in transferring to the purchaser all their right, title and interest. The subsequent possession of the property, by some of the parties to that cause, has, of course, not been of such duration as to imply a title by prescription. While no deed appears of record from the trustee to the purchaser under the decree, it is clear that the plaintiffs have derived no advantage from that omission. The ratification of the sale invested the purchaser with the substantial ownership of the land (*Lannay* v. *Wilson,* 30 Md. 550), and as against the title granted by his deed, and the actual possession obtained for value by his grantee, the plaintiffs have no subsisting interest upon which the relief they seek in this suit can be predicated.

The trustee's report of sale, as transcribed in the record, gives the name of the purchaser as Robert W. H*eunt*, while the deed to Mr. Clark in February, 1913, was executed by Robert W. H*enut*. This discrepancy, when coupled with the inability of plaintiff's counsel, as shown by the testimony, to locate any person having such a name, in either form, though diligent inquiries were conducted to that end, has been made

the ground of an argument that no such person existed and that the grantor in the deed was fictitious. In the option agreement, signed by JUDGE RUSSUM as trustee and as attorney for the purchaser, the name of the latter, as copied for the record, is given as He*nutt*, and that is the name which the Court below, with its ample opportunity to inspect the original papers, treated as the correct designation of the person to whom the land was sold by the trustee. In the face of the certificate of the notary in Philadelphia, before whom the deed was acknowledged, we are not at liberty to hold upon mere negative proof of failure to find the grantor, during the pendency of this cause, that no such person was in existence at the time of the execution of the deed. The action of JUDGE RUSSUM as trustee, in making and reporting the sale, precludes any question as to his knowledge of the purchaser's identity.

Upon the case presented we can have no doubt as to the propriety of the decree passed by the Court below dismissing the bill of complaint.

*Decree affirmed, with costs.*