JANOSKE ET UX. *v.* FRIEND ET UX.

[No. 362, September Term, 1970.]

*Decided April 6, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*William W. Grant* for appellants.

*Clarence A. Penman* for appellees.

SMITH, J., delivered the opinion of the Court.

We are here presented with the question of whether a recorded contract of sale may be availed of by a defendant in an ejectment action under a not guilty plea, no plea on equitable grounds having been filed.

Appellants Howard W. Janoske (Janoske) and Barbara W. Janoske, his wife, (the Janoskes) bought a tract of land in Garrett County. The metes and bounds description called for 88 acres, with no exceptions for out-conveyances, but Janoske testified that what he bought was 83.6 acres. Appellees, Melvin Friend (Friend) and Joyce Friend, his wife, (the Friends) were in possession of a corner of this land under a contract of sale recorded among the land records of Garrett County. The trial judge said their corner amounted to three-fourths of an acre. The Janoskes brought an action in ejectment.

They appeal a judgment entered in favor of the Friends. For reasons which will hereafter appear, we shall remand the case without affirmance or reversal.

The testimony showed that Janoske became interested in the subject property when it was advertised in a Washington newspaper. It was specified there as 83.6 acres. He went to Garrett County in August of 1969, inspected the property, and bought it. In response to a question as to whether the seller gave him any description of the property, he said:

> "No real description, he gave me a deed with his name and his wife's name and—a recorded deed showing 83.6 acres with nothing taken off of it. I took this deed with me at the time."

Janoske said he took the deed to the office of a Garrett County attorney and there instructed him:

> "[T]o make sure that I was buying all the coal rights, all the mineral — in other words, I wanted to make sure that I had a complete and clear deed and I wanted him to write down all the right-of-ways and power lines and gas lines that were taken across the property."

The attorney prepared the deed which was ultimately executed on August 30, 1969, and which specified 88 acres.

Apparently, a portion of the tract was sold off prior to 1946. Janoske said that he assumed something had been sold off when he was told by the seller that there were 83.6 acres in what he was buying. In response to a question on cross-examination as to whether he had walked over the property with the seller, Janoske said:

> "Yes, sir, we rode out to the oats field all the way to the end of the county road and then we walked through the oats field and down to where the—where he had dug the coal."

Janoske claimed that the first he knew of the Friend parcel was when he noted in a newspaper that a piece of land owned by A.T.&T. Co. in Garrett County was to be sold. Because of this, he went to the court house to look at the records. In doing so he "came across [the Friends'] land contract or agreement that was recorded in the book." He then went to Friend, told him he had a deed for the land, that he was the owner of Friend's house and asked him to vacate the premises. Friend refused to do so.

Ernest Gank, who sold the land to the Janoskes, called as a witness by Friend, testified:

"I showed [Janoske]—I showed him every line on the place and I showed him what was sold off, and I didn't tell him about—that I was getting $25.00 a month rent for that place, I told him I sold it—give $25.00 a month payments for the place."

In response to a question as to whether he told Janoske that "Friend owned that particular house which has been referred to as the tenant house", Gank replied very succinctly, "I did." At another point the record is:

"Q. Did you ever mention to [Mr. Janoske] that Mr. Friend owned this piece of property? A. I did, I told him it was sold off, I told him it was sold off to Mr. Friend."

Friend testified that he bought his land from Gank in March of 1969 with its being later surveyed about May 16, 1969. At another point, the record of examination of Friend is:

"Q. Now, when did you first learn that Mr. Janoske thought he owned your property? A. He come to me and said for me to leave.

"Q. When was this if you remember? A. Well, the first time I believe was in November, but he didn't ask me to move.

* * *

"Q. How long ago—or how long was it between the first visit and the second visit? A. That was sometime in December.

"Q. It was in December? A. Yeah.

"Q. And what did he say to you on that occasion? A. Well, he come there and he said, I own the land, I want you to move, and I told him he didn't own the land because I owned it and I showed him the contract, and I went up to Mr. Gank's house for the deed and showed him the deed, and he said that wasn't no account, so then he left and didn't come back for a week or two later and he wanted to buy the place off of me."

The trial judge in his opinion said in pertinent part:

"The testimony in this case obviously reveals an oversight and mistake in the preparation of the deed from Ernest L. Gank and Ethel M. Gank, his wife, to Howard W. Janoske and Barbara W. Janoske, his wife, * * * in that said deed fails to reflect a prior conveyance of 4.4 acres off of this property as well as a recorded contract for the sale of a parcel of said land; said parcel actually containing ¾ acres as shown by a subsequent survey.

"For these reasons the grantees, Howard W. Janoske and Barbara W. Janoske, his wife, could not receive the full 88 acres as stated in the deed, and by his testimony he knew that he was getting less than the full 88 acres. The testimony clearly establishes that the grantors, Ernest L. Gank and wife, did not intend to sell the 4.4 acres previously sold under a recorded deed, nor the small parcel which was under a recorded contract of sale.

"Although the recorded contract for the sale of a small parcel of the land in question is

rather vague and indefinite as to location, it serves to some degree as constructive notice, but the testimony quite clearly reveals that actual notice was given to Howard W. Janoske that the small parcel under contract for sale to Melvin Friend and wife was not to be included in the transaction."

The survey and the contract of sale do not form a part of the record of the case.

The sole plea filed by the Friends was, "Not Guilty." Maryland Rule T42 b states:

"The plea of not guilty shall be held a confession of the possession and ejectment, and shall put in issue as between the parties only:
(1) The title to the land,
(2) The right to possession of the land, and
(3) The amount of damages."

The Janoskes contend most strenuously that by the introduction of their deed they established legal title to the land occupied by the Friends and, therefore, the Friends "should not be permitted to deny the [Janoskes] possession of the property the [Janoskes] had purchased from the Ganks", since no plea on equitable grounds was filed on behalf of the Friends.

The plea on equitable grounds is of comparatively recent vintage, coming into Maryland practice with the enactment of Chapter 547 of the Acts of 1888. 1 Poe, *Pleading and Practice* § 275A (Tiffany ed. 1925). Provision for it is now found in Maryland Rule 342 d 1. *See Bond v. Murray*, 118 Md. 445, 84 A. 655 (1912), for a review of matters which may be raised under that plea in an ejectment action.

It is elementary that the plaintiff in an ejectment action must recover upon the strength of his own title and not upon the weakness of the title of the defendant. This is in accordance with the first of what Mr. Poe calls the "cardinal rules in ejectment". 1 Poe, *op. cit.* § 260. The

other two cardinal rules are that he must have the legal title to the land and must have the right of possession. *Id.* §§ 261 and 263. Under the plea of not guilty the onus of establishing a good title was on the plaintiff. *Denn v. Jones,* 26 Md. 462, 477 (1867). The Janoskes made out a prima facie case here when they proved the deed to them.

The Friends, to successfully contest the title of the Janoskes, would be obliged to prove a title in someone other than the Janoskes. As Judge (later Chief Judge) Alvey put it for our predecessors in *Lannay v. Wilson,* 30 Md. 536 (1869):

> "It is unquestionably true, that, where the plaintiff shows a *prima facie* good title, it is incumbent on the defendant, setting up an outstanding title by way of defense, to establish the existence of such title with clearness and precision; and generally a title of such nature as to entitle the stranger to recover in ejectment against either of the contending parties. *Hall v. Gittings,* 2 H. & J. 125." *Id.* at 546.

The Court in *Waltemeyer v. Baughman,* 63 Md. 200, 203 (1885), after referring to *Hall v. Gittings,* 2 H. & J. 112 (1807), put it slightly differently, saying, "It must be * * * a clear subsisting title on which recovery can be had." An equitable title would not suffice, since a legal title only will prevail in ejectment. *Fredericks v. Cisco,* 72 Md. 393, 395, 20 A. 190 (1890); *Sanders v. McDonald,* 63 Md. 503, 508 (1885); and *Leonard v. Diamond,* 31 Md. 536, 541 (1869). Accordingly, the equitable title here of the Friends would not in and of itself be a sufficient basis for judgment on their behalf.

In *Lannay* there was a decree in the Court of Chancery in 1815 for the sale of mortgaged premises. One of the mortgagees purchased the land at the trustee's sale. The mortgagor delivered up possession to the purchaser. The trustee apparently never executed a deed for the land sold. In 1863 the devisees of the mortgagor brought

an action in ejectment against those who claimed under
the purchaser at the foreclosure sale. Judge Alvey there
said for the Court:

> "A purchaser under a decree in equity becomes
> the substantial owner of the property from the
> moment of final ratification of the sale, and he
> is entitled to and can recover the rents and prof-
> its of the estate. He is not only entitled to the
> possession of the property, but it remains at his
> risk, notwithstanding the legal title may not be
> conveyed. By such sale the dry legal title, and
> the right of possession often become completely
> severed, at least for a time,—the legal title re-
> maining in some of the parties to the cause,
> while the equitable estate and right of posses-
> sion become vested in the purchaser. * * * But
> it does not by any means follow that, because
> the naked legal title to such part of the land re-
> mained in him, his devisees are entitled to re-
> cover it in this action. One of the requisites is
> wanting, that of the right of possession." *Id.*
> at 550.

We find that language persuasive here.

If the contract of sale under which the Friends claim,
admittedly recorded prior to the deed to the Janoskes,
provides for possession by the Friends, this is such a de-
fense as would be permitted under the general issue plea
of not guilty. The Friends would then be entitled to pre-
vail in the ejectment action. From the opinion in the
trial court, one would infer that the trial judge saw the
contract. Since it is not filed as an exhibit in the proceed-
ings, we do not know whether it provided for possession.
Therefore, in the interest of justice and in accordance
with Rule 871, we shall remand the case without affirm-
ance or reversal to permit introduction of the contract.

If upon the remand it should develop that the contract
does not provide that the Friends should have the pos-

session of the premises pending execution of the deed, then judgment must be entered for the plaintiffs, the Janoskes, against the defendants, the Friends, unless, of course, prior to the final judgment the Friends under Rule 320 interpose a plea on equitable grounds (Rule 342 d 1) setting forth their contract to purchase the land. In that situation due consideration would have to be given to that plea and the holdings of such cases as *Fertitta v. Bay Shore Dev. Corp.*, 252 Md. 393, 250 A. 2d 69 (1969) ; *Grayson v. Buffington,* 233 Md. 340, 196 A. 2d 893 (1964) ; *Blondell v. Turover,* 195 Md. 251, 72 A. 2d 697 (1950) ; and *Smoot v. Rea,* 19 Md. 398 (1863).

> *Remanded for further proceedings without affirmance or reversal; costs to abide the final result.*